UNITED STATES *v.* FERDINAND RICE ET AL.

**No. 4886.**—Invoices dated Kobe, Japan, August 17, 1937, etc.
  Certified August 18, 1937, etc.
  Entered at New York September 22, 1937, etc.
  Entry No. 741991, etc.

Third Division, Appellate Term

(Decided April 24, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Lane & Wallace* (*William Young* of counsel) for the appellees.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: These five cases are before the court on an application to review the decision of the trial judge published in Reap. Dec. 4623. The merchandise the subject of the appeals consists of silk piece goods, invoiced as "raw Kawamata," imported from Kobe, Japan, on various dates from August 18, 1937, to October 27, 1937. An examination of the consular invoices indicates that Cooper, Findlay & Co., Ltd., of Kobe was the seller of the merchandise.

The silk goods covered by the shipments are all in pieces 48 inches wide and 63 yards long, the only variation in the goods being in the weight of the fabrics. The merchandise was invoiced in United States currency at different values and was appraised at the same values as invoiced less certain nondutiable charges, with the notation that the appraisements were at export values. The dates of certification of the invoices, the grades of goods in the various shipments, and the appraised values are as follows:

| Reap. No. | Date of certification | Weight of goods | per piece |
|---|---|---|---|
| 121719–A | August 18, 1937 | 3½ momme | $7. 10 |
| 122012–A | Sept. 2, 1937 | 3½ " | 7. 10 |
| 122587–A | Oct. 11, 1937 | 4 " | 7. 60 |
| 122666–A | Oct. 1, 1937 | 3½ " | 7. 05 |
| 123020–A | Oct. 27, 1937 | 3¼ " | 6. 75 |

From the above unit values the appraiser deducted invoice charges for hauling and shipping, insurance, freight, and consul fee.

The importer entered the merchandise in Japanese currency, making a deduction from the invoice values on the entries covered

by reappraisements 121719–A, 122587–A, and 123020–A. The entered unit values were as follows:

| 121719–A | Yen 21.30 per piece, plus packing |
| 122587–A | " 23.50 " " " " |
| 123020–A | " 20.75 " " " " |

The entries covered by reappraisements 122012–A and 122666–A were made at the appraised values under duress, the importer claiming that the proper dutiable values were as follows:

| 122012–A | Yen 21.85 per piece, plus packing |
| 122666–A | " 21.75 " " " " |

The values found by the trial judge are as follows:

| 121719–A | Yen 21.90 per piece, plus packing |
| 122587–A | " 23.50 " " " " |
| 123020–A | " 19.95 " " " " |
| 122012–A | " 21.85 " " " " |
| 122666–A | " 21.75 " " " " |

No oral testimony was submitted before the trial judge but counsel for the respective parties agreed that the shipments were in the usual wholesale quantities, that Kobe is the principal market in Japan for the type of merchandise involved, that the export value is the correct basis of appraisal, and that the merchandise was appraised on the export value.

The plaintiff introduced an affidavit of Harold Stannett Williams, a representative director of Cooper, Findlay & Co., Ltd., and, without objection, it was received in evidence and marked "Exhibit 1." After the plaintiff rested, counsel for the defendant moved to dismiss the appeals on the ground that the importers had not made out a *prima facie* case as Exhibit 1 shows merely the Japanese purchase prices of Cooper, Findlay & Co., Ltd., in Japan and does not show the prices at which like merchandise was sold for export to the United States. This motion was denied by the trial judge and the denial thereof is one of the assignments of error in the Government's application for review.

The defendant offered a copy of a report by Treasury Attaché Martin G. Scott (No. K37–262), dated December 18, 1937, and, without objection, the same was received in evidence and marked "Exhibit 2."

Exhibit 1 contains the following statement:

That at all time herein mentioned he was fully informed on the market value and the price at which such merchandise was sold and freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

That such merchandise of the following descriptions was so freely offered for sale on the several dates and at the prices shown below.

Raw Kawamata Habutai Silk Piece Goods 48 inches by 63 yards

| Description | Date | | Market Value Price |
|---|---|---|---|
| 3¼ mme. | 18th August | 1937 | Yen 20. 90 per pce |
| ,, | 28th August | 1937 | ,, 20. 85 |
| ,, | 28th September | 1937 | ,, 20. 75 |
| ,, | 9th October | 1937 | ,, 20. 50 |
| | 27th October | 1937 | ,, 18. 85 |
| 3½ mme. | 18th August | 1937 | ,, 21. 90 |
| ,, | 28th August | 1937 | ,, 21. 85 |
| ,, | 28th September | 1937 | ,, 21. 75 |
| ,, | 9th October | 1937 | ,, 21. 50 |
| ,, | 27th October | 1937 | ,, 19. 95 |
| 4 mme. | 18th August | 1937 | ,, 24. 00 |
| ,, | 28th August | 1937 | ,, 24. 00 |
| ,, | 28th September | 1937 | ,, 23. 65 |
| ,, | 9th October | 1937 | ,, 23. 50 |
| ,, | 27th October | 1937 | ,, 21. 95 |

That the usual wholesale quantity in which such merchandise is sold is from fifty (50) pieces to two hundred (200) pieces of 63 yards each, and that the principal market for such merchandise in Japan is Kobe.

That attached hereto and made a part hereof are copies of invoices covering actual sales of Raw Kawamata Habutai Silk Piece Goods. All said copies of invoices show date of sale, purchaser, description of merchandise and price.

An examination of the copies of invoices attached to the exhibit shows that they relate to the identical transactions covered by the shipments herein involved and that the prices on the invoices are the same as those used by the appraiser in making his appraisement. There are two invoices for each shipment, one a commercial invoice and the other a consular, the latter being identical with the consular invoices upon which the entries were made, and the commercial invoices are priced in United States currency the same as the consular invoices. Both contain the same case numbers, and Cooper Findlay & Co., Ltd., is the seller, and the importer in this case is the purchaser, according to the heading on the invoices.

Exhibit 1 contains also the following statement:

That also attached hereto and made a part hereof are copies of correspondence and purchase memos containing details of wholesale purchasers, and also a letter from the wholesaler, all of which are submitted herewith for the purpose of establishing the price at which said Raw Kawamata Habutai Silk Piece Goods were freely offered for sale in Japan for shipment to the United States.

The "purchase memos" referred to in the affidavit show purchases by Cooper, Findlay & Co., Ltd., from Messrs. Yui Shoten of Japan on different dates. The prices are in Japanese currency and appear to be the same for the dates of sale specified as those quoted above from the affidavit in Exhibit 1, which prices are the same as those the im-

porters in this case claim to be the correct dutiable value. Those sales were made between two firms in Japan and not between one firm in Japan and one in the United States.

The letter from the wholesaler, referred to in the affidavit, is a letter addressed by Yui & Co. to Cooper, Findlay & Co., Ltd., of Kobe, stating in part as follows:

We confirm that the prices stated hereunder were the market prices at which Raw Kawamata was sold and/or freely offered for sale in the usual wholesale quantities in the ordinary course of trade on the dates in question.

Below this statement appear prices in Japanese currency for the three different weights of Raw Kawamata on a number of different dates. These prices, as nearly as we have been able to check them, correspond with the prices which are given in the affidavit and which the importers claim are the correct values for the merchandise. However, the letter does not state that the prices are the export values or are prices at which the goods are sold for export.

Other letters attached to the affidavit appear to be copies of letters addressed by Cooper, Findlay & Co., Ltd., to Mr. M. J. Hart and Mr. P. A. MacDermott of New York. They refer to the particular shipments herein under consideration and purport to give the current values of the merchandise in Japanese currency, the values being substantially the same as those found by the trial judge in these cases.

Exhibit 2 contains a report by the Treasury attaché regarding an investigation of the transaction covered by consular invoice 23912, certified August 18, 1937, which is the invoice covered by reappraisement 121719–A under consideration in this case. The report contains the following:

On December 17, 1937, the firm of Cooper, Findlay & Co., Ltd., 110 Ito-machi, Kobe, was visited, the firm's Mr. H. S. Williams, Representative Director, interviewed, and the following information, verified unless otherwise stated by the firm's books and records secured:

The merchandise shipped on the invoice in question was result of order from Rice dated June 29, 1937 (by cable) for 300 pieces Raw Kawamata 3½ momme 48″ x 63 yds., at $7.10 per piece, c.i.f. New York.

After acceptance of the order, on the same date, Cooper, Findlay ordered the merchandise from Yui Shoten, Kobe, at ¥22.50 per piece, unpacked, delivered Cooper, Findlay's premises, delivery by August 20th.

Delivery was duly made, and the merchandise shipped on August 17th, at $7.10 per piece.

The above is the record of the transaction, i. e. a purchase was made in the Kobe market at ¥22.50 per piece and a c.i.f. New York sale at $7.10.

Notation was made on the invoice to the effect that market value on date of shipment was ¥21.30 per piece. This Mr. Williams advised was in error, and based on a transaction on August 5th for 100 pieces 3¼ momme habutai at ¥21.20, whereas the merchandise shipped was 3½ momme goods. The firm's last purchase of 3½ momme habutai preceding the date of the shipment in question was on August 16th, when 300 pieces was purchased at ¥21.90 per piece.

\*      \*      \*      \*      \*      \*      \*

The only source of supply for this merchandise is Yui Shoten, the individual weavers not accepting direct business.

Mr. Williams advised that their business was all done in the same way as the above transaction, ie. they receive an order from abroad, after acceptance of the same they would contract with Yui for the goods, Yui would deliver, they would inspect the goods, pay Yui and ship. The firm is constantly in touch with Yui and the market, and know at what price they can accept business when an offer is received.

The Treasury attaché reports further that on December 17, 1937, he visited the place of business of Yui Shoten and interviewed the proprietor, Mr. U. Yui, from whom he secured the following information:

Yui Shoten are brokers and wholesalers of various silk and rayon textiles.

As regards Kawamata Habutai, this merchandise is all made in and around Kawamata, Japan, and cannot be and is not produced elsewhere. The weavers in Kawamata have appointed Yui their sole selling agent. Hence in Japan, this merchandise can only be bought from Yui Shoten, either their Yokohama or Kobe office.

Yui Shoten do no direct export business but are content to sell to local firms, who in turn ship or export the merchandise. Mr. Yui advised that though there was nothing to prevent them accepting such business, they would not be interested in any order or enquiry from abroad, as they were satisfied with their present business connections, and direct export business was too much trouble.

\* \* \* \* \* \* \*

The firm's records of transactions with their various customers is simplicity itself. Yui's salesmen will go to Cooper, Findlay for example, which firm will be in market for habutai. A price will be agreed on and Cooper, Findlay's manager will write out an order memorandum about as follows, retaining carbon copy:

"Oct. 1, 1937.
200 pieces 3½ momme Kawamata 48" x 63 yds. @ ¥22.50.
Delivery by November 15th."

\* \* \* \* \* \* \*

In the ordinary course of business Yui carries no stocks. He accepts orders from his various customers, and sends the same back to the weaving district for filling. When the merchandise comes in, he delivers it to the customer, receives his money and remits what is due to the weavers. However, in slack times such as the present, the weavers to keep their plants going will produce Habutai in anticipation of future orders, which will be forwarded Yui to dispose of when possible.

The Assistant Attorney General claims in his brief that the trial judge erred in appraising the merchandise at the values at which such goods were offered for sale and sold by Yui Shoten in the home market of Japan at or immediately prior to the time of exportation of the merchandise herein, since those prices were the foreign values and not the export values which were higher. He contends further that the importer failed to prove that the fabrics were offered or sold for exportation at prices different from the values found by the appraiser.

The trial judge, in his decision, quoted excerpts from Exhibit 1 and evidently based his appraisement on the values shown in the schedule

of prices contained therein, because all of the values found by him correspond with the values in the schedule of prices for the various days of shipment, or immediately prior thereto, except the value of the 3¼ momme goods found in reappraisement 123020–A. The merchandise in that case was appraised by the trial judge at 19.95 yen per piece, plus packing, whereas the schedule of prices in Exhibit 1 indicates that the price of the 3¼ momme Habutai on October 27, 1937, which is the date the invoice was certified, was 18.85 yen.

The copies of "purchase memos" which the affiant attached to the affidavit in Exhibit 1 as evidence of transactions and which contain the same prices for the same dates that are shown in the schedule in the affidavit, show that the sales were made by Messrs. Yui Shoten to Cooper, Findlay & Co., Ltd., of Kobe, Japan. They indicate that the sales were made between firms in Japan and were not sales by a Japanese firm to a firm in the United States. This evidence is sufficient to explain the affiant's understanding of the words "for exportation to the United States" used in his affidavit wherein he states that the prices enumerated in the schedule in the affidavit are the prices "at which such merchandise was sold and freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities in the ordinary course of trade for exportation to the United States." Evidently the affiant purchased the goods from Yui Shoten to fill orders which the affiant had received from the United States and he believed the merchandise was "for exportation to the United States" because he was going to export it after Yui Shoten filled the orders.

The situation is similar to that in the case of *Jenkins Bros.* v. *United States*, 25 C. C. P. A. 90, T. D. 49093, wherein an affidavit in the record contained a statement to the effect that sales to retailers were not in the usual wholesale quantities, but the affidavit contained a list of the sales of the concern from an inspection of which the court was able to determine the usual wholesale quantities. The court held that the statement of the affiant as to the usual wholesale quantities was a conclusion of the witness and disregarded the statement. The court said at pages 95 and 96:

It is true that the affidavit of said Moncrieff states that sales to retailers for resale are not in the usual wholesale quantities, but this is merely a conclusion by him, drawn from the facts set out in detail in his affidavit. While a statement that a given quantity is or is not a usual wholesale quantity might in some circumstances be regarded as some substantial evidence of the fact, such a statement can have no weight as a statement of fact when all of the facts upon which the statement is made are disclosed. It then becomes merely a conclusion of the witness, which can have no weight with the court in determining what is a usual wholesale quantity.

It is apparent from the evidence attached to the affidavit that the values of the merchandise given in the affidavit are the prices at

which the merchandise was sold or offered for sale in Japan between two firms in that country. Therefore the statement in the affidavit that those prices are the prices "for exportation to the United States" can be given no weight in view of the evidence submitted in the form of so-called "purchase memos."

According to the statements in Exhibit 2, Yui Shoten makes no exportations or sales to firms in the United States. The business of the firm is limited to selling goods to other firms in Japan which other firms do export merchandise from Japan to the United States.

This case raises the question as to whether export value of merchandise which is destined for export to the United States is the value at which it is sold to the foreign exporter in the markets of Japan or whether it is the value which the foreign exporter offers the merchandise for sale to his customers in the United States.

Section 402 (d) of the Tariff Act of 1930 defines export value as follows:

> The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Counsel in this case agreed in open court that the proper basis for appraisement is export value. The importers contend that, as the goods were shipped from 30 to 60 days after they were ordered, and since the market was falling steadily from the date the first order was placed, the value to be used in making entry is the export value of the goods on the date of shipment irrespective of the prices paid for the same. This appears to be a sound principle and in accord with the definition of export value in section 402 (d). Therefore the importer's contention should be sustained, provided that the evidence offered establishes the export value at the time of shipment.

It appears from an examination of the exhibits that the ordinary course of trade in raw Kawamata Habutai silk goods in Japan is as follows: Exporters of the goods, such as Cooper, Findlay & Co., Ltd., receive an order for such merchandise from a firm in the United States at an agreed price. The exporter then enters into a contract with Yui Shoten for the goods at the market price prevailing in Japan at that time. Yui Shoten obtains the goods from weavers in Kawamata, Japan, and within from 30 to 60 days the goods are produced and Yui Shoten delivers them to the exporter, who then examines the same, packs them for shipment, and ships them to the United States. In

the entire transaction the exporter acts in his own behalf and does not act as an agent for the American purchaser.

Counsel for the Government contends that the sales by Yui Shoten establish a foreign market for the merchandise as he freely offers it for sale to various firms in Japan and that the price at which he sells the goods on the various dates are the foreign values thereof, even though the sales be not for home consumption in Japan. This brings up the question whether the values which the importers claim are correct were the foreign values or the export values. They are lower than the values which the appraiser returned as the export values.

In the case of *United States* v. *Allenby & Co. et al.*, 20 C. C. P. A. 80, T. D. 45703, the court held that export silk piece goods sold to manufacturers in Japan who manufacture the fabrics into articles to be sold for export to the United States and to tourists shops, had foreign values. The court said:

> The court below, in considering the testimony of the witness Kamei, stated that—"his sales were principally for export to the United States and other foreign countries, and also to *manufacturers of silk articles for exportation in Yokohama and Kobe;* * * * *that the domestic manufacturers of articles for export and for the tourist trade freely buy export silks of the above description from the affiant and other dealers in quantities of about 10 pieces at a time at prices which do not include nor have added thereto the textile-consumption tax.*" [Italics quoted.]

> It clearly appears from the testimony relied upon by the court below that export silk piece goods, similar to that here involved, were freely offered for sale and sold in the usual wholesale quantities and in the ordinary course of trade in Japan to be there manufactured into silk articles, and that they were so sold and freely offered for sale at prices which did not include, nor have added thereto, the textile-consumption tax.

> We are of opinion, therefore, that the silk piece goods had foreign values, and that the court below erred in holding to the contrary.

In the case of *United States* v. *Livingston & Southard, Inc.* 23 C. C. P. A. 214, T. D. 48060, the court held that unrestricted sales to countries other than the United States should be considered in arriving at the foreign value of imported merchandise. The court said at page 220:

> * * * It is our opinion that, under said section 402 (c) all unrestricted offers for sale, such as those in this case at bar, in the principal markets of the country from which the merchandise is exported, whether for home consumption or for export to countries other than the United States, should be considered in arriving at the foreign value of imported merchandise.

The merchandise in *United States* v. *Allenby & Co. et al.*, *supra*, was imported while the Tariff Act of 1922 was in force, while that in *United States* v. *Livingston & Southard, Inc.*, *supra*, was imported under the Tariff Act of 1930, but the definition of foreign value was the same in each act. The definition in the Tariff Act of 1930 reads as follows:

SEC. 402 (c). FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

That definition was amended in section 8 of the Customs Administrative Act of 1938 by inserting the words "for home consumption" after the words "at which such or similar merchandise is freely offered for sale to all purchasers." However, the merchandise herein involved was imported prior to the amendment and at that time the section contained no language limiting foreign values to the prices at which goods were sold for home consumption.

Under the provisions of the statute as interpreted in *United States* v. *Allenby & Co. et al., supra*, it must be held that sales and offers for sale by Yui Shoten to Cooper, Findlay & Co., Ltd., and to the various other firms in Japan, establish a foreign value for the goods, as claimed by the United States, rather than an export value, as claimed by the importers in this case.

We find from the evidence as follows:

1. Kawamata Habutai silk piece goods such as were covered by the importations herein were freely offered for sale and were sold by Yui Shoten to dealers in Japan on the various dates of shipment herein at prices shown in Exhibit 1, quoted above, and that such sales establish foreign values for the merchandise.

2. That the prices at which Cooper, Findlay & Co., Ltd., offered the merchandise to the American importer were the export values thereof, but the record contains no evidence of the price at which Cooper, Findlay & Co., Ltd., or any other Japanese exporter, offered such goods to American importers on the various dates of shipments of the merchandise in this case.

3. That the export values of the merchandise as found by the appraiser are higher than the foreign values.

4. That the usual wholesale quantities in which the merchandise was sold are as stipulated between counsel, that is, the quantities covered by these shipments.

5. That Kobe is the principal market in Japan for the sale of merchandise such as that under consideration.

It was stipulated in open court that the appraiser appraised the goods at the export values thereof. The importers made a deduction from those prices and entered the goods at the values referred to in our first finding as foreign values and therefore it is manifest that the export values of the merchandise are higher than the foreign values.

Section 402 (a) (1) specifies that the value of imported merchandise shall be "The foreign value or the export value, whichever is higher," therefore we hold that export value is the proper basis for appraisement. Since no evidence was introduced to show that the prices at which the goods were offered or sold by the exporters to the importers at the time of exportation in the usual wholesale quantities and in the ordinary course of trade were different from the values returned by the appraiser, we hold that the merchandise is dutiable at the values found by the appraiser, his decision being presumptively correct.

The decision of the trial judge is reversed and the case is remanded with instructions to appraise the merchandise at the values found by the appraiser.