HENSEL, BRUCKMANN & LORBACHER, INC. *v*. UNITED STATES

**No. 5984.**—Invoices dated Kobe, Japan, November 9, 1936, etc.
Entered at New York, N. Y., December 18, 1936, etc.
Entry No. 55883, etc.

(Decided February 18, 1944)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

CLINE, Judge: In this case 15 appeals for reappraisement were consolidated for trial. The merchandise involved is invoiced as "Fuji silk," item number "5500, kanebo." It was imported in pieces 36 inches wide and 50 yards in length, the colors being designated as natural, bleached, and colored, different values being given for each condition. The dates of shipment are from September 29, 1936, to April 7, 1937. The goods were invoiced at prices in Japanese yen per yard and charges for packing, drayage and shipping, marine insurance, freight, consular fee, and buying commission were added on the invoices. They were entered under so-called duress on the basis of export values at prices in United States dollars per piece,

packing included, to meet advances made by the appraiser in other shipments on appeal to reappraisement. Appraisement was made at the entered values. The plaintiff claims that the merchandise should be reappraised at the invoice unit values.

The plaintiff called Mr. T. F. Bagshaw who is the owner of Patten, Mackenzie & Co., the party in interest. He testified that Hensel, Bruckmann & Lorbacher, Inc., in whose name the entries were filed, is his customs broker; that there was another firm having the name Patten, Mackenzie & Co. which is owned by Mr. D. Mackenzie and operated in Japan and China; that he testified before this court in 1939 with respect to the same class of merchandise as is herein involved.

The record in reappraisement 120600–A, etc., which is the case in which Mr. Bagshaw testified in 1939, was incorporated and made a part of the record in the instant case.

The witness testified further that the prices of the materials varied a little in the instant cases, due to market conditions; that the item "Buying commission, 4%," noted on the invoices, represents the compensation or profit to Patten, Mackenzie & Co. of Kobe, Japan, for services of purchasing, exporting, and preparing the necessary documents for shipping the silk to this country, and that commission was included in the other charges on the invoices; that on some other kinds of goods the commission is 7½ per centum; that the commission of 4 per centum was mutually agreed upon with respect to kanebo silk 5500; that the amounts on the invoices represent the amounts he paid.

On cross-examination, the witness testified that the 4 per centum commission is a part of the cost over and above the price that was paid for the silk; that a price is quoted for the silk and on top of that they add the 4 per centum commission as a buying commission for his agent.

The next witness called by the plaintiff was Mr. David Mackenzie. The witness testified that he was an exporter and commission agent at the time of these shipments, with a place of business in both Japan and China; that he bought merchandise like exhibit 1 in reappraisement 120600–A for clients but not for himself and exported it to Patten, Mackenzie & Co. of San Francisco, John Wanamaker of New York, and a number of other firms; that he bought the material from Kamei who is an agent for Kanegafuchi, the spinning company; that he went back to Japan in October 1936 and remained there until 1942; that from October 1936 until March 1937 he was personally familiar with the market for kanebo silk 5500 and bought the same in the market at Kobe, which was one of the principal markets in Japan; that the prices on the invoices to Patten, Mackenzie & Co. of San Francisco represent the freely offered market values for the merchandise and that such statement is based on definite records of

silk prices from day to day; that such merchandise was not sold for home consumption in Japan; that Patten, Mackenzie & Co. of San Francisco paid his firm through drafts which included charges for the services of his firm amounting to 4 per centum on item kanebo 5500, which was his firm's buying commission for handling the merchandise.

The attention of the witness was directed to the invoice covered by reappraisement number 121167–A and he was asked to explain the language in the first item on the invoice reading "total 2,250 yds., less 56¼ yds." and he stated that the 56¼ yards represent damaged merchandise or imperfect goods which were deducted from the total yardage; that the silk was examined by his firm and when damaged merchandise was found, such as bad ends, a flaw in the weaving, or a spot, he would call in the Kamei man and the damage was settled by negotiation.

On cross-examination the witness testified that his firm never kept a stock of goods on hand; that he merely put through orders for his clients or customers in the United States; that the prices varied from day to day; that such merchandise was not sold in the home market in Japan; that up to 1938 he might have been able to buy a piece of the silk but after 1938 he could not even do that.

The defendant offered a copy of a report of Treasury representative J. W. Sutcliffe, dated July 16, 1936, No. Y36–68, and, subject to plaintiff's objections to be made in his brief, it was admitted in evidence and marked defendant's exhibit No. 1.

Mr. Mackenzie was recalled and testified that the Japanese do not use fabrics 36 inches in width, the fabrics they use being 14 inches in width or multiples of that width; that Kamei Shoten sells silk known as kanebo 5500 to firms other than his own for export.

In his brief counsel for the plaintiff made objections to defendant's exhibit No. 1, but inasmuch as the objections relate to the weight to be given that document, rather than to its admissibility, the objections are overruled with exception granted to plaintiff.

Defendant's exhibit No. 1 shows the prices of silk of the kanebo 5500 quality paid Kamei Shoten by Berrick Co. and Doshi Trading Co. of Yokohama in January and February 1936. The dates of those shipments are too remote to be of value in this case. The document states also that Kamei Shoten controls the sales "by only offering this Fuji silk to Berrick & Co. and also to Doshi Trading Co." This statement is rebutted by the testimony of Mr. David Mackenzie who stated that Kamei Shoten freely offered the merchandise to all purchasers.

The record in reappraisement 120600–A, etc., which was incorporated herein, was passed upon in *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 5 Cust. Ct. 525, Reap. Dec. 5010, affirmed on

appeal in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 6 Cust. Ct. 936, Reap. Dec. 5244. That record has been examined with care, but, inasmuch as the court reviewed it in great detail in those cases, it is deemed unnecessary to do so again.

The case cited covered two appeals to reappraisement, numbers 120600–A and 120601–A. The unit invoice prices of the Fuji silk goods were in Japanese yen per yard and entry in reappraisement 120601–A was made on the basis of the invoice values, plus packing, with a deduction of the nondutiable charges, including a commission of 4 per centum. On the entry covered by reappraisement 120600–A, however, the importer made a voluntary addition of 4 per centum for commission, and entry in that case was made at the invoice values, less certain nondutiable charges, plus the commission and packing. The appraiser advanced the value in both cases, appraising the silk at values in United States dollars per piece of goods, packing included. The trial judge reappraised the merchandise at the entered values, but refused to pass upon the dutiable character of the item of 4 per centum commission in reappraisement 120600–A on the ground that the collector could not liquidate the entry on less than the entered value, but the deduction of the commission on the entry covered by number 120601–A was allowed. The Appellate Division affirmed the decision below and specifically declined to rule on the action of the trial judge with respect to the 4 per centum commission added to the entry covered by reappraisement 120600–A because the importer did not file an application for review and could not secure a lower value than that found by the trial court.

The shipments in the instant cases are dated subsequent to those in reappraisement 120600–A, etc., but the evidence introduced shows that the prices of the goods on the invoices were the export values at which the goods were freely offered for sale in the usual wholesale quantities in the ordinary course of trade on the various dates of shipment in the principal markets of Japan.

The statements on the consular invoices in this case seem to bear out the contention of the plaintiff that Patten, Mackenzie & Co., of Japan, acted as the agent of the importer for the purchase of the goods. On the backs of the invoices, that firm is designated as the shipper and on the face of the blue sheet on all of the invoices there appears a statement similar to the language on the invoice covered by reappraisement 121167–A, reading as follows:

Invoice of (5) cases, Fuji Silk, purchased or agreed to be purchased by Messrs. Patten, Mackenzie & Co., of San Francisco, Calif., from Kamei Shoten, Pkg. No. 165/9, of 2-chome, Hachimandori, Kobe, as per order accepted Kamei Shoten, 5/11/36

That statement apparently shows that the goods were sold by Kamei Shoten to the plaintiff in this case.

Counsel for the defendant cites *United States* v. *Ferdinand Rice et al.*, 4 Cust. Ct. 813, Reap. Dec. 4886, and argues that, on the basis of that decision, the prices which Patten, Mackenzie & Co., of Japan, paid the Japanese distributor represent the foreign values of the goods and that the prices which Patten, Mackenzie & Co., of Japan, received from the plaintiff are the export values. Counsel claims that, since the plaintiff failed to prove an export value lower than the appraised value, there is a failure on the part of the plaintiff to overcome the presumption of correctness attaching to the appraiser's return. In the *Ferdinand Rice* case, *supra*, it appears that the shipper bought goods from the Japanese distributor and sold them at a profit to the American importer. It was not shown that the shipper was acting as the agent of the importer when he bought the merchandise in Japan and no buying commission was involved. In the instant cases it is shown that the shipper bought the goods in Japan for the importer and charged a commission of 4 per centum for his services. In such case the commission is not a part of the value of the goods, citing *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627; *Vandiver* v. *United States*, 6 Ct. Cust. Appls. 80, T. D. 35327; *United States* v. *Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39.

In reappraisement 120600-A, etc., the record of which is incorporated herein, the assistant appraiser testified that he appraised the merchandise in United States dollars per piece on the basis of certain c. i. f. prices from which prices he deducted certain nondutiable charges in order to obtain the appraised values, and that he made no allowance for the deductions in yardage shown on the invoices for defective goods. It would seem that an appraisement by the piece would not be proper in cases where the length of the perfect goods in the pieces varied and deduction in yardage for the imperfect and worthless goods was made on the invoices.

I find that Patten, Mackenzie & Co., of Japan, was the agent acting for the importer in purchasing the Fuji silk, item number 5500, kanebo, and that the agent charged 4 per centum commission for its services; that, as that firm purchased the goods for export as agent for the importer, the prices it paid were the export values of the goods; that there was no foreign value for such or similar merchandise because the quality of goods here involved was not sold in Japan for home consumption; that the invoice values in each case, less the nondutiable charges which included commission at 4 per centum, are the prices at which the merchandise was freely offered for sale for exportation to the United States in the usual wholesale quantities in the ordinary course of trade in Kobe, one of the principal markets of Japan, on the various dates of shipment.

On the basis of the foregoing findings of fact, I reappraise the Fuji silk, quality 5500, kanebo, at the unit invoice values, plus packing.

Judgment will be rendered accordingly.