SCHARF BROS. CO., INC. *v.* UNITED STATES

No. 4365.—Invoices dated Rotterdam, Holland, August 23, 1935, etc.
Certified August 23, 1935, etc.

Entered at New York September 3, 1935, etc.
Entry No. 724109, etc.

(Decided July 1, 1938)

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

KINCHELOE, Judge: These appeals to reappraisement involve the question of the dutiable value of certain wax paper imported by the plaintiff under the Tariff Act of 1930 from Holland, covering a period from August 1935 to and including September 1936, and entered at the port of New York. All of said merchandise was invoiced and entered at 7¼ pence, English, for some designs and 7 pence for other designs, and were appraised at 850 florins per thousand kilos, plus 4 per centum, plus cases, equivalent to .75 Holland florins per case.

The plaintiff claims the purchase price of all these importations represents export value which is no higher than foreign value if foreign value exists. It also claims that there is no foreign value *per se.* The defendant claims that the proper basis for reappraisement is foreign value.

All of these cases were consolidated for trial by agreement of the attorneys for the plaintiff and defendant and that the evidence which

was produced in reappraisement 112196–A would apply with equal force to the balance of the appeals to reappraisement.

At the trial of this case the plaintiff's only evidence consisted of an affidavit of J. van Straten, chief clerk of the manufacturer, which was ordered filed and marked Exhibit 1. The plaintiff then rested. The attorney for the defendant then moved to dismiss all of these appeals to reappraisement on the ground that the plaintiff had failed to show by competent probative evidence a foreign or an export value, and if so, which is the higher; that he had failed to prove all the elements necessary in establishing either a foreign or export value, and also which one of the two if they both existed is the higher. The court took this motion to dismiss under advisement. The attorney for the defendant, however, did not rest his case on this motion to dismiss but produced in evidence a report of Walter M. Wolff, Treasury representative, dated December 7, 1935, with three exhibits referred to in the report which was filed as Exhibit 2.

I have carefully considered this motion to dismiss and, in order to render justice to both parties, it is a better procedure, in my judgment, to consider the whole record as made. Therefore, the motion to dismiss is hereby denied and exception to this ruling is given to the defendant.

In Exhibit 1, which is the affidavit made by J. van Straten, he is shown on this paper as the chief clerk of the manufacturers of the instant importations, but in his declaration or oath, he does not, however, swear to this fact. In point one of said affidavit this affiant stated in substance that he was personally responsible for all the invoices made out by the said manufacturers either for export or home consumption and he therefore affirms that he is fully conversant with the prices at which the products of his employer are sold. He does not state what his duties are when he says he is responsible for all the invoices made out by his firm, and he does not state in what way he is fully conversant with the prices at which the products of his employer sold. Therefore, it is a mere statement and a conclusion on his part.

In point two he states, in substance, that waxed paper similar in character and printing to the instant importations is being sold to other firms in the United States and being shipped directly to them, and that the price at which this paper is sold is the price at which this paper is readily offered for sale to all customers in the United States, in the usual wholesale quantities, and that the sales to the United States are not restricted to any person. In support of this statement he does not even state the other firms in the United States purchasing this paper or the price at which they purchased same, nor does he offer any copies of orders or sales to anyone in the United States nor does he state how he arrives at what constitutes wholesale quantities. All of this is a mere statement and conclusion on his part.

Point three states, in substance, that the merchandise shipped to other firms in the United States is the same as that shipped to plaintiff; that in most cases there is a difference in the way the paper is printed which, however, does not affect the quality or the market value of the merchandise; that the invoices of sales made to the United States of waxed paper similar in character and printing are *about* the same prices as the sales made to the plaintiff. He produces no evidence to substantiate his statement that the merchandise shipped to other firms in the United States is the same as that shipped to plaintiff, or that the invoices of sales to the United States are about the same prices as sales made to plaintiff. No schedule of prices or copies of orders or sales are filed to substantiate these statements.

Point four: He states that there is no ready market for waxed paper suitable for "Toffee Twisting" purposes in Holland, which is a mere statement and a conclusion on his part.

In point five he states in substance that a quantity of 2,500 kilos of "Stock Paper" of the class shipped to the United States would be considered a wholesale quantity. This is far from proving what are the usual wholesale quantities for export to the United States and in the ordinary course of trade.

In point six he states:

The value of Fl. 376.–per 1,000 Kilos has been *declared* as a result of *interpreting the meaning* of the term "Home market value" to be the value that would exist for such Papers in Holland in the event of such Papers being sold in Holland in wholesale quantities. [Italics mine.]

I do not know what basis or foundation upon which this witness makes this assertion and he does not state the basis or foundation for same. Also, I am really unable to know just what this witness means by the value expressed being "declared as a result of interpreting the meaning of the term Home market value." Section 402 (d) defines export value in part as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the *market value or the price*, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is *freely offered for sale* to all purchasers in the principal markets of the country from which exported, in the *usual wholesale quantities* and in the ordinary course of trade. \* \* \* [Italics mine.]

I have carefully examined Exhibit 2 and find that the special agent who executed said exhibit states on pages 7 and 8 the following:

*Foreign value*

Either the same or similar designs in wax-coated papers are freely offered and sold for home consumption in The Netherlands by this manufacturer. I found that in the *ordinary course of trade* Gebroeders Cats produce and sell *more expensive* papers of intricate design and color in the domestic market, these special goods not yet having been shipped to the United States. However, the *simple gold and*

*aniline-dye printed and waxed papers* are also sold in *comparatively small quantities* to Dutch purchasers. Such buyers are exclusively *consumers* such as candy factories and similar concerns using wax-coated papers in connection with their own merchandise. [Italics mine.]

In view of the above-quoted statement I am of the opinion that during the period of the importations of the instant merchandise there probably existed an export value for such or similar merchandise and that there probably was no foreign value for same. But the plaintiff failed completely, in my judgment, to prove the various elements of export value of such or similar merchandise as defined in section 402 (d) of the Tariff Act of 1930 and thereby failed to overcome the presumption of correctness attaching to the action of the appraiser in appraising the instant merchandise, which it must do pursuant to section 501 of the Tariff Act of 1930 to prevail, nor is there any evidence in said Exhibit 2 that is of any benefit to the plaintiff to overcome said presumption.

So, after thoroughly considering all the evidence in this case, to wit, Exhibits 1 and 2, I am of the opinion and so hold that the plaintiff has not produced evidence sufficient to overcome the presumption of correctness attaching to the action of the appraiser in the appraisement of the instant merchandise, nor is there any evidence in said Exhibit 2 that is of any benefit to the plaintiff to overcome said presumption. Therefore, all of these appeals to reappraisement are hereby dismissed. Judgment will be rendered accordingly.