591

UNITED STATES v. HENSEL, BRUCKMANN & LORBACHER, INC.

No. 4376.—Invoices dated Krefeld, Germany, December 8, 1936, etc. Certified December 16, 1936, etc.

Entered at New York January 4, 1937, etc.
Entry No. 796148, etc.

Third Division, Appellate Term

(Decided August 9, 1938)

*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.
*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the appellee.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

KEEFE, Judge: This application for review involves fifty-six appeals for reappraisement of shipments of turned and unturned steel tubing containing 1.40 per centum of chromium and no other alloy. The turned tubing is described on the invoices as "Geschalt," the unturned tubing is without designation and all was exported from Germany during the period from November 7, 1935, to March 13, 1937. Reappraisements 117845–A, 117846–A, and 117788–A are test cases and the remaining fifty-three appeals cover so-called "duress" entries.

The merchandise was entered upon the basis of the United States value, the importer claiming two basic domestic selling prices, namely $0.085 per pound for the "Geschalt" tubing and $0.075 for the unturned tubing. From the foregoing prices the importer figured the United States value to be as follows: Turned or "Geschalt" per pound, $0.055; unturned, $0.048. The appraiser agreed that the steel tubing was dutiable upon the basis of the United States value. However, he found the selling prices in the United States to be $0.10⅞ per pound for the "Geschalt" tubing; $0.09 per pound for the unturned tubing; and $0.16½ per pound for certain other unturned tubing having thick walls. After figuring the statutory deductions to determine the dutiable value, the appraiser found the United States value to be $0.0722 per pound for the "Geschalt" tubing; $0.0592 per pound for the unturned tubing; and $0.1115 per pound for the unturned tubing having thick walls.

The importer appealed for a reappraisement of the appraiser's finding, claiming that the usual wholesale quantity in which such tubing

was freely offered for sale to all purchasers in the principal market of the United States during the export period was 40,000 pounds or 20 tons of one size, and that there were but two basic domestic selling prices in that quantity, namely $0.085 per pound for the turned or "Geschalt" and $0.075 per pound for the unturned.

It was agreed between the parties hereto that the importer was the sole agent for this tubing in the United States and that the proper basis of appraisal was the United States value. From a reading of the record it appears that the sole controversy involved is the usual wholesale quantity in which the merchandise is bought and sold in the United States, and the United States value thereof in such quantity, as determined from the price at which it was freely offered to the trade in the United States to all purchasers, in the ordinary course of trade.

Section 402 (e) of the Tariff Act of 1930, under which the merchandise was entered and appraised, provides as follows:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, *in the usual wholesale quantities and in the ordinary course of trade,* with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods. [Italics not quoted.]

The record below is quite voluminous and includes the testimony of the sole agent and a purchasing agent of one of the mills to which the plaintiff sold steel tubing, and in addition many exhibits, consisting of orders, offers for sale and letters relating to the same, and affidavits of several witnesses in various cities giving their idea of what constituted a usual wholesale quantity of steel tubing.

Upon the evidence presented the trial court found as follows: That there were only two classes of merchandise imported, to wit, the turned and the unturned steel tubing; that there was no evidence relative to the third class described by the appraiser as "steel-tubing with thick walls" and the court concluded, therefore, that such a class did not exist; that the evidence established 40,000 pounds or 20 tons of one size to have been the usual wholesale quantity offered or sold to all purchasers in the ordinary course of trade, and that the prices at which such tubing was freely offered to all purchasers in such quantities were 8½ cents per pound for the turned tubing and 7½ cents per pound for the unturned; that the statutory United States value of the importations herein, as defined by section 402 (e), *supra,* is represented by the basic selling prices of 8½ cents and 7½ cents per pound, less 6 per centum commission, less the cost of transportation,

insurance, consular fee, and other necessary expenses from the place of manufacture to the dock in New York City, as shown by the respective invoices, less the duty; that, in making the finding of United States value, the court determined the aforesaid basic prices, leaving the actual calculation of dutiable United States value to the collector upon liquidation of the entries.

At the trial below, counsel for the Government strenuously objected to the admission of certain affidavits, known as Exhibits 22, 23, 24, and 25, upon the ground that the affiants were residents of the United States and no good reason or showing was made that they were not able to be present at the trial and that the admission thereof was contrary to the provisions of section 501, act of 1930. Government counsel on this appeal earnestly contends that the ruling of the trial court in admitting the foregoing exhibits was reversible error. Section 501, insofar as it authorizes the admission of affidavits in reappraisement cases, reads as follows:

SEC. 501. * * * In finding such value affidavits and depositions of persons whose attendance can not reasonably be had, * * * may be admitted in evidence.

This provision is a statutory relaxation of the rules of evidence. No doubt Congress, in providing for their admission in value cases, had in mind persons who were not within the jurisdiction of the court and whose presence could not be obtained without incurring unwarranted expense. Therefore, because of the foregoing section, in reappraisement of importations a rather wide latitude is allowed in the admission of evidence to establish value.

We are of the opinion that the admission of the affidavits was within the discretion of the trial court. The weight to be accorded such evidence is for that court to determine. We are not disposed to hold that the admission of the affidavits was error because of the importer's failure to show that the testimony of the affiants at the trial could not be obtained. On the other hand, we do not feel that we should approve or countenance the trial of this class of cases upon affidavits of persons or witnesses whose attendance may be had. Such action would deny the opposite side an opportunity of cross-examining the party executing the affidavit. We think the better practice would be to require a showing that the presence in the court of the affiants could not be obtained before permitting such affidavits to be admitted in evidence.

It is for the court to determine from the evidence presented what is a wholesale quantity in a given case. A wholesale quantity is not governed by a buyer's idea of what it should be but rather by the quantity in which a given article is usually bought and sold. These affidavits afford us no light in that regard. Therefore, it is our opinion that the conclusions expressed in said affidavits are not

based upon any facts which show that the affiants are qualified to express an opinion as to what is a wholesale quantity, or as to the price at which steel tubing in the usual wholesale quantities, and the ordinary course of trade, is freely offered for sale.

The manufacturer's agent, who is the importer here, testified that the merchandise in question can be manufactured economically only in 20-ton lots; that when an order is received for a lesser amount of one size the cost is relatively higher, because the balance of the 20 tons manufactured either has to be held in the hope of obtaining a customer for the same or scrapped and remanufactured. Therefore, the importer herein claims the lowest amount that can be economically manufactured at one time as being a wholesale quantity. He further testified that all orders for smaller quantities are retail transactions and the prices are relatively higher. The facts, as disclosed by the record, do not bear out this theory. It is true that after this controversy arose, the importer sent out thirteen letters containing offers to sell in 40,000-pound lots of one size at the prices for which he contends. All these offers except one were to manufacturers other than his regular customers. No orders were received as a result of the offers. We are not impressed with such evidence for the reason that the evidence as a whole shows that there are very few sales made in 40,000-pound lots of one size to any of his customers. In fact, there were but two, as follows: The Federal Bearings Co. placed orders in 20-ton lots or over for one size of tubing. Also the Marlin-Rockwell Corporation placed one order of 25 tons of a size. On the other hand those two companies also purchased in small lots. As shown by the invoices and bills in evidence from ten customers, six seemed to receive the lower prices irrespective of the size of the orders of each size. Four others were charged prices as high as 10⅞ to 16½ cents per pound. The importer further testified that these wholesale prices were offered as a special inducement to a few customers who could purchase the foreign manufacturer's entire production of a size, or whose business appellant was anxious to obtain, and to jobbers whose sales were to manufacturing concerns; that his prices in the American market for the tubing in question were governed upon the buying habits of each customer in manner following: First, he considered the party who buys and then the volume of business he may expect from the customer, rather than the quantity of each sale; that his prices are based on the "average run of quantities" purchased by each customer, "plus other little considerations like credit risk." Knowing how large a potential buyer each customer may be, he fixed his prices and offered his goods at the price he believed commensurate with good business. He further admitted that the major portion of sales made to the seven companies to whom he makes his largest sales averaged under 40,000 pounds.

The only other direct testimony offered was that of the purchasing agent of the Norma-Hoffman Bearing Corporation who testified as follows: That he was offered steel tubing at 8½ cents per pound in quantities of 40,000 pounds or over, but did not accept the offer because it was economically more desirable to purchase in smaller quantities even though he had to pay the higher price of 10⅝ cents. This witness considered that a quantity of steel tubing over 10,000 pounds was very large. That even though his company manufactures 1,300 different kinds of bearings, their production did not warrant the purchase of 40,000 pounds of tubings of one size.

An examination of the invoices involved here discloses that about 500 items of tubings of various sizes are enumerated; that two items are for quantities of 40,000 pounds or over; five for more than 20,000 pounds, but under 30,000; twenty-five for more than 10,000 pounds, but under 20,000; and the remainder is invoiced in quantities less than 10,000 pounds, the large majority of the items being in quantities less than 5,000 pounds.

In our opinion the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to *all* purchasers in the ordinary course of trade, is the price to be adopted as the basis used in determining the United States value. It is needless to state that the foreign manufacturer's determination that it was more economical for his concern to produce tubing in 20-ton lots of one size would have no weight in establishing that the usual wholesale quantity in the ordinary course of trade in the United States of such tubing was in 20-ton lots. The evidence fully establishes, in our opinion, that in the ordinary course of trade in the United States the quantities usually sold were far smaller than 20-ton lots.

The price of tubing in 20-ton lots offered to the favored few surely is not the value to be adopted. The statutory price is the offering to all purchasers who are willing to purchase the merchandise in the wholesale quantities in which the merchandise is *usually* sold in the United States. The plaintiff has endeavored to establish that the 20-ton lots represent the only wholesale quantity and that all other quantities sold are retail transactions. It is true that in the evidence presented in this case there are sales in quantities that are less than the usual wholesale quantities, and also sales in quantities larger than the usual, but they are all wholesale transactions rather than retail. The importer did not attempt to establish the quantity in which the merchandise is *usually* bought and sold and there is insufficient evidence to prove that steel tubing was offered at the time of exportation of the merchandise herein to *all* purchasers at the prices he considers should govern wholesale purchases, or at any other established price. We are unable to find any evidence in the record to support the find-

ing below that there are only two classes of this particular steel tubing. Consequently the presumption of correctness of the appraiser's finding of three classes has not been overcome. The appraiser has returned the merchandise at a United States value which he considers to be the price of the merchandise in the usual wholesale quantities as offered or sold to all of the plaintiff's customers in the United States. The correctness of the appraiser's finding of value has not been overcome by the testimony and evidence here adduced.

We further find that the court erred in failing to make a specific finding of United States value. Section 402 (e) defines United States value as the freely offered price in the United States of such or similar merchandise on the date of exportation. Such or similar merchandise has been construed by the courts to mean "prototype merchandise." See *United States* v. *Carbic Color & Chemical Co.*, T. D. 40859, 47 Treas. Dec. 526; *United States* v. *Beer*, 15 Ct. Cust. Appls. 140, T. D. 42215. The United States value is to be determined by deducting the amounts of transportation, insurance, and other necessary expenses, commission, duty, etc., which accrued on the prototype merchandise used as a basis of appraisement from the United States selling price found to prevail upon the dates of exportation of the imported merchandise. The return of the United States selling price by this court together with the finding that the United States value may be determined therefrom by deducting the statutory expenses appearing upon each invoice is clearly contrary to law. See also *United States* v. *American Aniline Products, Inc.*, 22 C. C. P. A. 380, T. D. 47399. It is solely the province of the court to return the United States value.

Upon a careful consideration of the record we find as facts:

1. That the merchandise consists of turned and unturned steel tubing containing 1.40 per centum of chromium and no other alloy, and unturned tubing having thick walls.

2. That there is no foreign or export value for the merchandise.

3. That the merchandise is dutiable upon the basis of the United States value.

4. That the prices at which such or similar imported merchandise were freely offered for sale, packed ready for delivery in the principal market of the United States to all purchasers, at the time of exportation of the importations herein, in the usual wholesale quantities and in the ordinary course of trade, after allowing all deductible charges specified in section 402 (e), act of 1930, are as found by the appraiser.

Therefore, as a matter of law, we hold that the dutiable value of the merchandise is represented by the prices found by the appraiser in each particular case.

Judgment will therefore be entered reversing the judgment of the trial court and sustaining the values found by the appraiser.