UNITED STATES v. ALEXANDER BROS.

No. 4410.—Invoice dated Skipton, England, April 27, 1937.
Certified April 29, 1937.
Entered at Philadelphia, Pa., May 15, 1937.
Entry No. 11239.

(Decided October 11, 1938)

Charles D. Lawrence, Acting Assistant Attorney General (Daniel I. Auster, special attorney), for the plaintiff.
Tompkins & Tompkins (Allerton deC. Tompkins of counsel) for the defendants.

KINCHELOE, Judge: This is a collector's appeal to reappraisement involving the dutiable value of merchandise which consists of belting leather in butts exported from England during the month of April 1937 and entered at the port of Philadelphia.

The said merchandise was entered and appraised at a unit price of £0 3s. 8d. per pound, less discount, and less certain nondutiable charges. The plaintiff contends that the proper dutiable value of the merchandise is export value, to wit, £0 4s. 1d. per pound, less 2½ per centum cash discount, less nondutiable charges.

At the trial of this case, the attorney for the plaintiff offered in evidence a report consisting of a mimeographed certified copy of a

655

report of Chas. R. Howard, assistant Treasury attaché, dated June 30, 1937, together with sample exhibits forming a part of that report called A and B which were marked in evidence 'as Collective Exhibit 1. The attorney for the plaintiff also offered in evidence a copy of a letter dated June 9, 1937, file No. 110484, addressed "To Collectors of Customs and Others Concerned", issued over the signature of James H. Moyle, Commissioner of Customs. The attorney for the defendant objected to the introduction of this letter in evidence and the court sustained this objection to which the attorney for the plaintiff excepted, but said letter was filed as Exhibit 2 for identification. The attorney for the plaintiff then submitted and the attorney for the defendant offered no evidence and upon this record the case was submitted.

After careful consideration of the record in this case the facts seem to be that the defendant purchased this merchandise from J. Brooksbank, Son & Co., Ltd., of England, by reason of an order of date February 10, 1937. The consular invoice is dated April 27, 1937, and was consulated April 29, 1937, and the merchandise was exported to this country on April 30, 1937. I have carefully considered Collective Exhibit 1 in this case and it fairly shows in substance the following facts: The said Charles R. Howard, assistant Treasury attaché, visited the offices of said manufacturer on June 2 and 17, 1937; that a Mr. A. Butterfield, a director of the said manufacturer, produced to him a pricelist of such merchandise dated March 29, 1937, and stated to said Howard that the prices contained therein were current at the dates of his visiting said manufacturer, to wit, June 2 and June 17, 1937. The said report further shows that the designation of the instant merchandise is shown on said current pricelist as check strap bends, and that said current price as shown in said report and copied from the current prices of the manufacturer of date March 29, 1937, for check strap bends is £0 4s. 1d. per pound, c. i. f. New York. He then gives copies of other sales of said manufacturer, not only to the defendant but to other importers of the said check strap bends in the United States. I have carefully examined the names and addresses of said other importers to the United States of said merchandise from said manufacturer and the prices all of them have paid for such or similar merchandise. Each of said sales of such or similar merchandise by said manufacturer, not only to the defendant but to other American importers, since March 29, 1937, the date of the pricelist, regardless of the amount bought or the conditions of sale, is at a unit price of £0 4s. 1d. per pound. A copy of said sales is shown on pages 4 and 5 of said report.

On page 10 in said report said Howard says that said Butterfield stated that the c. i. f. prices are uniformly 1d. per pound higher than

the price at which the merchandise would be sold for home consumption. This uncontradicted evidence clearly shows that there is no foreign value for such or similar merchandise that is higher than the export value of same.

On page 8 in said report the said Howard stated that the usual wholesale quantities of such or similar merchandise as the instant importation sold for export to the United States are from 500 to 2,000 pounds. This statement, in my judgment, standing alone, is a mere conclusion of said Howard, and without corroboration by further evidence would have very little probative value. However, as stated before, every sale set out in this report for such or similar merchandise as the instant importation sold by said manufacturer for exportation to the United States since March 29, 1937, the date of the current pricelist, regardless of quantity or condition of sale, was sold by said manufacturer at the unit price of £0 4s. 1d. per pound.

It must be borne in mind that this appeal for reappraisement is a collector's appeal. This being true, that part of section 501 of the Tariff Act of 1930 providing in substance that the value found by the appraiser shall be presumed to be the value of the merchandise and that the burden shall rest upon the party who challenges its correctness to prove otherwise is just as binding in a reappraisement case on a collector's appeal as it is on an importer's appeal.

However, after carefully considering Collective Exhibit 1, I am of the opinion that there is ample probative evidence in same to overcome the presumption of correctness attaching to the appraiser in the appraisement of the instant merchandise. I, therefore, make the following finding of facts:

1. That the merchandise covered by this reappraisement consists of check strap bends.

2. At the time of the exportation of the instant merchandise there was no foreign value for same, but if so, said value was not as high as the export value of same.

3. That export value as defined in section 402 (d) of the Tariff Act of 1930, is the correct basis for the determination of the dutiable value of the instant merchandise.

4. That the correct dutiable value of the instant merchandise is £0 4s. 1d. per pound, less 2½ per centum cash discount, less consular fee, carriage to Liverpool, freight and insurance to New York, as invoiced.

I hold as a matter of law that the correct dutiable value of the instant merchandise is the export value as set forth in finding of fact number 4. Judgment will be rendered accordingly.