SANDERS MFG. CO. *v.* UNITED STATES

No. 5044.—Invoices dated Neuhaus am Rennweg, Germany, December 22, 1934, etc.
Entered at Nashville, Tenn., January 24, 1935, etc.
Entry No. 40–A, etc.

(Decided on remand (Reap. Dec. 4694) November 4, 1940)

*Moreau P. Estes* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath* and *Samuel D. Spector*, special attorneys), for the defendant.

CLINE, Judge: The question involved in these reappraisements is the value of sand glasses, known as 3-minute egg timers, telephone timers, etc., exported from Germany at various dates and entered at

the port of Nashville. Eight appeals were consolidated and tried together. The cases are now before the court on rehearing: Trials were held at Nashville on May 8, 1936, and November 2, 1937, and a decision was rendered by Judge Brown holding that the dutiable value of the merchandise was 28.50 reichsmarks per thousand, plus cases and packing at 5.50 reichsmarks per case (Reap. Dec. 4302, 73 Treas. Dec. 1519). The United States filed an application for review and the Appellate Division of this court reversed the judgment of the trial judge and held that the plaintiff had not produced evidence sufficient to overcome the presumption of correctness attaching to the appraiser's action and directed that the case be remanded for rehearing for all purposes (Reap. Dec. 4694). The Appellate Division held also that Judge Brown erred in admitting two affidavits in evidence (exhibits 3 and 4) because they contained jurats written in the German language.

The suit numbers, names of shippers, dates of exportation, and invoice prices of the merchandise are shown in the following schedule:

| Reap. No. | Shipper | Date of Exportation | Invoice price |
|---|---|---|---|
| 110204–A | Hollein & Reinhardt__ | Jan.  4/35 | RM 37.50 per thousand, plus cases and packing. |
| 110205–A | | Dec. 19/34 | |
| 110207–A | | Jan. 17/35 | |
| 110206–A | Robert Bosenberg_____ | Jan. 20/35 | $11.60 per thousand, plus packing, with charge for insurance and freight to Baltimore. |
| 110203–A | Heinrich Rammes_____ | Feb. 28/35 | $12.00 per thousand, packing included; cif New York. |
| 110208–A | | Jan. 10/35 | |
| 110209–A | | Jan. 24/35 | |
| 110210–A | | Feb. 14/35 | |

Entry of the merchandise from Hollein & Reinhardt was made at 27.50 reichsmarks per thousand, plus cases and packing. The merchandise from Robert Bosenberg was entered at the unit invoice price, plus packing. The merchandise from Heinrich Rammes was entered at the unit invoice price less insurance and freight from Furth to New York, except that an additional deduction of $8.50 for nondutiable charges was made on the entry covered by appeal 110209–A.

All of the merchandise was appraised on the basis of foreign value at 37.50 reichsmarks per thousand, plus packing and cases at 5.50 reichsmarks per case.

At the rehearing counsel for the Government offered in evidence the record made in the case at the previous trial, which record had been reviewed by the Appellate Division of this court. The record was admitted in evidence without objection. The Appellate Division reviewed this evidence in great detail in its decision published in Reap. Dec. 4694 and therefore it is deemed unnecessary to lengthen this decision by again reviewing the same matter. The only point in the Appellate Division's review which seems to differ from the facts

is that the Appellate Division states that, of the letters offered in evidence and rejected at the first hearing and marked "collective exhibit 2 for identification", only two were admitted in evidence as "collective exhibit 2." It appears that Judge Brown admitted all of the letters in collective exhibit 2 for identification, as shown in his opinion in Reap. Dec. 4302, and that there were two other letters which were admitted in evidence before him and marked "collective exhibit 5".

At the trial on rehearing the plaintiff introduced the testimony of Carl Otto Katz with respect to the jurats on the affidavits in exhibits 3 and 4 which the Appellate Division criticized because they were in the German language and because of this defect held that the exhibits had been erroneously admitted in evidence. The witness testified that he was born in Germany, attended school there, and understood both the German and the English languages. When asked to read the statement in the German language on the back of the affidavit in exhibit 3, he replied:

A. The signature of the merchant, Mr. Eugen Rammes, sole owner of the firm of Heinrich Rammes, in Furth in Bavaria, is herewith attested. Furth, September 19, 1936. Notary Public, Precinct Furth I. Signed, Mayer, Notary Public.

When asked to translate the statement on the back of exhibit 4, the witness said:

A. The signature on the other side of this document of the merchant, Mr. Leo Stubenreich, in Nurnberg—W Garden Street Number 3, is herewith attested. The identity of Mr. Stubenreich has been verified by the notary public through the merchant Mr. Eugen Rammes in Furth, who is a personal acquaintance of the notary public. Furth, September 19, 1936, Notary Public, Precinct Furth I, Mayer, Notary Public.

The witness translated also the seals on the back of the exhibits as follows:

Counsel of Justice, Ferdinant Mayer, Notary in Furth, Bavaria.

Counsel for the defendant objected to these affidavits on the ground that they were not in proper form, were unauthenticated documents having no consular certificate attached thereto, and having no certificate of any court of record to show that the person who purports to be a notary is authorized under the law to take signatures on such instruments. The objection was taken under advisement and the affidavits were marked "exhibits A and B for identification."

Counsel for the plaintiff points out that the exhibits begin with the statement "Affiant states under oath" and "Affiant makes oath," respectively, and that the exhibits show on their face that they were executed under oath and that they contain the seal of the notary showing his official status.

There appears to be no set form for an affidavit admissible under the authority of section 501 of the Tariff Act of 1930, citing *Amtorg Trading Corp.* v. *United States*, 21 C. C. P. A. 532, T. D. 46975, and there is no requirement that an affidavit be executed before a United States official, such as consul, etc. The defect found in the affidavits by the Appellate Division has been cured by the translation of the jurats in open court.

The witness testified that he had been a resident of Germany until the year 1923 and that his two brothers were lawyers and that he knew the statements on the back of the affidavits were the official way by which affidavits were attested in Germany. The fact that they are still attested the same way would seem to indicate that the method had not changed. The affidavits are received in evidence as exhibits 3 and 4, which marks they bear, and exception is granted counsel for the Government.

The plaintiff called Mr. J. J. Sanders who testified at the previous hearings. He stated that he keeps in touch with the markets in Germany by correspondence and by taking magazines; that he did not ask for a special price but purchased the goods in this case in the open market in the usual course of trade.

The plaintiff called also Mr. Harvey W. Douglas, who is the deputy collector of customs at the port of Nashville and who appraised the merchandise in these cases. He testified that he appraised the sand glasses on the basis of foreign value at 37.50 reichsmarks per thousand, plus cases and packing at 5.50 reichsmarks per case.

The plaintiff in a reappraisement case has the burden of establishing every element necessary to enable the court to appraise the merchandise. The appellate court has specified these requirements in a number of decisions. In the case of *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, 253, T. D. 46057, the court said:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

A portion of the above excerpt was quoted with approval in the case of *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. 1, 5, T. D. 48264, in which case the court announced the burden resting on the appellant in a reappraisement case covering a coal-tar product imported under the Tariff Act of 1930 wherein the merchandise had been appraised on the basis of American selling price, and, substantially the same statement, which was quoted by the Appellate Division in remanding this case, was made in *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276.

It becomes important, therefore, in reviewing the record in this case, to ascertain if the plaintiff has met the burden resting upon him under the test suggested by the appellate court. An examination of the oral testimony introduced at the various hearings indicates that there is not one statement therein relating to the foreign value of the merchandise, except the statement of the appraiser that he appraised the goods at the foreign value. The importer was not qualified to testify regarding the foreign value of the goods as he had never visited Germany and had not purchased goods or received offers for goods for delivery in Germany. All he knew was what he paid for the merchandise and what quotations he had received covering transactions relating to products for exportation to the United States.

The only evidence introduced by the plaintiff relating to foreign value of the merchandise is contained in the affidavit of Heinrich Rammes marked exhibit 3, the pertinent parts of which read as follows:

* * * that on or about December 22, 1934, January 3, 1935, January 16, 1935, February 2, 1935, and February 20, 1935, respectively, the above firm exported to Sanders Mfg. Co., Nashville, Tennessee, One Hundred Thousand, Three Minute Sand Glasses, 3½ inches long by ⁹⁄₁₆ inches for the price of Rmk: 28.50 less 3% discount, making Rmk: 27.75 per thousand, and that these sandglasses or similar or identical merchandise at this price and at this time were freely offered for sale by said firm to all purchasers in the principal markets of Germany in the usual wholesale quantities at the usual cash discount.

The said amount of One Hundred Thousand Sand Glasses was and is the usual wholesale quantity.

The above price included the cost of all containers and coverings of whatever nature and all costs and charges incident to placing the merchandise in condition packed ready for shipment to the United States.

The invoices of Heinrich Rammes in reappraisements 110203–A, 110208–A, 110209–A, and 110210–A all contain the statement at the bottom of the invoice that "Goods are solely made for the export of the USA."

United States Treasury Representative Horace A. Browne, whose report was admitted in evidence as exhibit 7, states that he visited the office of Heinrich Rammes and examined the books and records of the firm. The following excerpts appear in the exhibit:

General:

The product shipped to the United States is the regular merchandise bought by H. Rammes from manufacturer Eduard Heinz Blechstedt, Neuhaus a.Rwg.-Igelshieb, Germany, at Rm. 28.50 per thousand, less 3% cash discount, packing included, delivered fob Hamburg.

\* \* \* \* \* \* \*

FOREIGN VALUE

Heinrich Rammes does not sell any merchandise whatsoever in Germany. He is merely an exporter.

The above statement in exhibit 7 seems to corroborate the statement on the invoices that "Goods are solely made for the export of the USA."

Thus it appears from these documents that the Treasury Representative reports in exhibit 7 that Heinrich Rammes purchased sand glasses from Eduard Heinz Blechstedt at 28.50 reichsmarks per thousand less 3 per centum discount, packing included, delivered at Hamburg (without giving the date of sale) and that Heinrich Rammes does not sell merchandise in the markets of Germany, while in the affidavit of Heinrich Rammes (exhibit 3) it is stated that he exported the sand glasses to the importer at 28.50 reichsmarks per thousand, less 3 per centum discount, packing included, and that he offered similar or identical merchandise at those prices in the principal markets of Germany in the usual wholesale quantities. The only way these statements can be reconciled is to assume that Heinrich Rammes offered sand glasses for sale in Germany at the price he paid for them (28.50 reichsmarks per thousand, less 3 per centum discount) but did not make any sales.

The affidavit in exhibit 3 does not contain all the essential elements necessary to establish foreign value. In the first place, it does not identify the principal market for sand glasses in Germany. That is one of the essential elements in the proof of statutory value. In the case of *United States* v. *Pacific Customs Brokerage Co.*, Reap. Dec. 4159, 72 Treas. Dec. 1169, the court said:

Since the statute requires that the value I find for this merchandise must be based upon the market value or price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the *principal markets* of the country from which exported, and not being able from the evidence to determine the *principal market*, or *markets*, of the country from which this merchandise was exported, it is clear that I am unable to find a value for this merchandise other than that found by the appraiser. The price at which this or similar merchandise was freely offered for sale to all purchasers in any market, other than the *principal market* or *markets*, under the statute, would be no evidence of the value of this merchandise. [Italics quoted.]

That decision was affirmed in *United States* v. *Pacific Customs Brokerage Co.*, Reap. Dec. 4369, 1 Cust. Ct. 586.

In the second place, the statement in the affidavit as to what constitutes the usual wholesale quantity in which the merchandise was sold in Germany is a conclusion on the part of the affiant, since it is not supported by evidence of offers or sales, and it has little probative value. In the case of *United States* v. *Alexander Bros.*, 1 Cust. Ct. 654, Reap. Dec. 4410, wherein the Government attempted to prove the usual wholesale quantity by a report of Treasury Attaché Charles H. Howard, the court said:

On page 8 in said report the said Howard stated that the usual wholesale quantities of such or similar merchandise as the instant importation sold for export

to the United States are from 500 to 2,000 pounds. This statement, in my judgment, standing alone, is a mere conclusion of said Howard, and without corroboration by further evidence would have very little probative value.

The same conclusion was reached in the case of *Scharf Bros. Co., Inc.* v. *United States*, 1 Cust. Ct. 572, Reap. Dec. 4365, wherein the importer attempted to prove the price at which paper similar to the imported product was sold to firms in the United States. The court said:

> In point two (in the affidavit) he states, in substance, that waxed paper similar in character and printing to the instant importations is being sold to other firms in the United States and being shipped directly to them, and that the price at which this paper is sold is the price at which this paper is readily offered for sale to all customers in the United States, in the usual wholesale quantities, and that the sales to the United States are not restricted to any person. In support of this statement he does not even state the other firms in the United States purchasing this paper or the price at which they purchased same, nor does he offer any copies of orders or sales to anyone in the United States nor does he state how he arrives at what constitutes wholesale quantities. All of this is a mere statement and conclusion on his part.

In harmony with the decisions cited, I hold that the affidavit of Heinrich Rammes (exhibit 3) does not contain adequate proof to sustain all of the statutory elements necessary to establish foreign value of the merchandise.

The plaintiff introduced considerable testimony showing offers of sand glasses for exportation to the United States received both before and after the shipments herein involved but those offers are not sufficient to overcome the presumption of correctness attaching to the appraisement at foreign value. Section 402 (a) of the Tariff Act of 1930 states that the value of imported merchandise shall be (1) the foreign value or the export value, whichever is higher. Therefore, even though the export value or the value which a United States importer paid for foreign goods is lower than the foreign value of the same or similar merchandise, the merchandise cannot be appraised at the export value when there is a higher foreign value of the goods.

Mr. Sanders testified that he paid for the goods imported from Hollein & Reinhardt by a barter arrangement whereby he paid $1,132 to Hendrickson & Co. of Springfield, Tenn., which was the amount due for a shipment of tobacco made by Hendrickson & Co. to Ankersmith & Co. of Friedland, Germany, and Ankersmith & Co. paid Hollein & Reinhardt for the sand glasses which were shipped by Hollein & Reinhardt to Sanders Manufacturing Co. The record does not show whether Sanders Manufacturing Co. received any benefit from this barter arrangement but it is significant to note the report made by Treasury Representative John P. Griebel (exhibit 6) who visited the factory of Hollein & Reinhardt and obtained information from the books and records of the firm. With respect to

the sale to Sanders Manufacturing Co., which was the only sale in the United States made by the firm, he states:

The manufacturer quoted a price of RM 37.50 per 1000 for the 3-minute timers on November 3, 1934, ex-factory, payable against shipping documents.

The order was placed by cable, November 14, 1934, and was for 100,000 timers no price shown. The acceptance is dated November 28, 1934 at RM 37.50 per 1000, ex-factory, payable against shipping documents.

*The consular invoice, commercial invoice and office records all agree and show that this price was paid.* [Italics not quoted.]

The invoices of Hollein & Reinhardt contain the following notation at the bottom thereof:

The market value of this merchandise for home consumption in Germany is as follows: 37.50 RM.

The invoice of Robert Bosenberg contains a statement at the bottom thereof indicating that the value of the merchandise if sold for home consumption in Germany is 33.465 reichmarks per thousand.

The plaintiff cites *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217 and *United States* v. *Glendinning, McLeish & Co., Inc.* 12 Ct. Cust. Appls. 222, T. D. 40229, in support of his claim that the merchandise should be appraised at the price paid therefor. It is significant to note that the shipment covered by *Lloyd Co.* v. *United States, supra,* was imported while the Tariff Act of 1913 was in force. That act contained no provision making the dutiable value the foreign value or the export value, whichever was higher. The shipment in *United States* v. *Glendinning, McLeish & Co., Inc., supra,* was imported under the Tariff Act of 1922. Neither of those acts contained the provision now found in section 501 of the Tariff Act of 1930 giving the appraisement the presumption of correctness and placing the burden on the party who challenges its correctness to prove otherwise. Those cases, therefore, are not in point.

On the record in the instant cases the court is unable to find a value different from that returned by the appraiser. Where the record fails to establish all elements necessary for a valid appraisement, the appellate court had held that appeals to reappraisement should be dismissed, citing *Chas. A. Johnson & Co.* v. *United States,* 17 C. C. P. A. 107, T. D. 43432. The appeals in this case are dismissed. Judgment will be entered accordingly.