(Reap. Dec. 9392)

JOHN A. CONKEY & CO., A/C GAMBY & CO., INC. *v.* UNITED STATES

Entry No. 10324, etc.

(Decided April 8, 1959)

*Siegel, Mandell & Davidson (Joshua M. Davidson* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

RAO, Judge: The instant appeals for reappraisement, which have been consolidated for the purposes of trial, relate to various importations from India of unbleached cotton sheeting. The merchandise in each of the shipments was entered at the invoice unit price, less certain nondutiable charges, not here in issue, which, in the case of reappraisement number 237362–A was $0.14½ per yard, C & F, Boston, and in the case of all other entries was $0.16¼ per yard, C & F, Boston. Said merchandise was appraised at, respectively, $0.1645 per yard, net, packed, less nondutiable charges, and $0.1843, per yard, net, packed, less nondutiable charges.

The basis of value adopted by the appraiser is not affirmatively shown either in the official papers or in the record. By implication from the conclusions of law submitted by the Government, it would appear to be conceded that the proper basis for determining the value of the subject merchandise is export value, as defined in section 402(d) of the Tariff Act of 1930. Plaintiff contends that the export value is represented by the invoice values, less the usual allowances for freight and forwarding charges. Apparently, it is the position of defendant that the appraised values represent export value.

Export value is defined in said section 402(d) as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

At the trial of this case, plaintiff introduced into evidence as exhibit 1 an affidavit of Dulichand M. Jain, a partner in the firm of Mitter Sain Rupchand, the exporter of the instant merchandise. The affidavit reads as follows:

Dulichand M. Jain, being duly sworn, deposes and says:

That he is a partner of the firm of Mitter Sain Rupchand, dealers in merchandise and agents in the City of Bombay, India;

That for a number of years they have been dealing in unbleached grey India cotton sheeting, selling same for export to the United States and all other countries throughout the world;

That they are familiar with the market conditions prevailing throughout the years 1950 and 1951 and are likewise familiar with all sales and exportations made by various shippers to the United States during this period of such or similar merchandise;

That in the months of November and December, 1950 and January, 1951 the market prices or value of cotton sheeting was freely offered for export to the United States at the following prices:

Quality 223, Medium, was sold C & F, United States at 14½¢ per yard.

Quality 150–151[1] was freely offered in the above export market C & F at 16¼¢ per yard.

Quality 3869[2] was offered at 16¼¢ per yard.

That the prices at which we offered these goods to Gamby & Co. were freely offered in the ordinary course of trade with restrictions or controls by the Government of India.

That these prices are all C & F Boston and include charges for inland and ocean freight and all other charges and expenses incident to placing the merchandise ready for shipment to the United States;

That deponent is familiar with prices at which the goods were sold in the principal markets of India in the usual wholesale quantities and that such prices were no higher than prices at which the goods were offered and sold by our firm;

That the Textile Commissioner of the Government of India under Government laws enforced a strict export control for goods exported to Sterling areas;

That goods made in the domestic market for domestic consumption were subject to price restrictions under so-called cotton cloth and yarn control orders

---

[1] As invoiced, this quality appears to be No. 151/41.

[2] As invoiced, this quality appears to be No. 98098. No. 3869 is the invoice number covering the merchandise designated by quality No. 98098.

under which both wholesale and retail prices of every variety of cotton cloth produced in India were determined by the Textile Commissioner of the Government of India.

That prices at which goods were offered and sold to the United States market were not subject to any controls whatsoever. The principal market for the sale of textiles of the character sold to the firm of Gamby was the City of Bombay and the usual wholesale quantities at which such goods were offered were 50,000 yards and above.

Counsel for defendant objected to the affidavit on the ground that it consisted of conclusions unsupported by evidentiary facts. Moreover, as exhibit 1 constituted the only evidence in the case, a motion was made to dismiss these appeals for reappraisement for a failure of proof.

In the brief filed by defendant, it is urged, *inter alia*, that the affidavit does not contain competent evidence of usual wholesale quantities or of the location of the principal market and, therefore, that plaintiff has not overcome the presumption of correctness attaching to the appraiser's returns, citing *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *M. Hashimoto et al.* v. *United States*, 69 Treas. Dec. 1431, Reap. Dec. 3818; *Sanders Mfg. Co.* v. *United States*, 5 Cust. Ct. 585, Reap. Dec. 5044; *United States* v. *Alexander Bros.*, 1 Cust. Ct. 654, Reap. Dec. 4410; *Scharf Bros. Co., Inc.* v. *United States*, 1 Cust. Ct. 572, Reap. Dec. 4365; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 1 Cust. Ct. 591, Reap. Dec. 4376.

The *Brooks Paper Company* case, *supra*, is particularly germane here, as it similarly involved the question of the probative value of statements in an affidavit relating to usual wholesale quantities. At the outset, the court observed:

By statutory provision [1] Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C.C.P.A. (Customs) 1, T.D. 48264, citing *United States* v. *T.D. Downing Co.* (*George H. Sweetnam, Inc.*), 20 C.C.P.A. (Customs) 251, T.D. 46057. It is clear, from a reading of section 402 (c) and (d), *supra*, that in order to prove foreign value or export value as a basis for a valid reappraisement, *the appellant must establish, inter alia, the usual wholesale quantities* in which such or similar merchandise involved was freely offered for sale to all purchasers in the principal markets of the country from which exported, etc. This court has so construed the statute in the case of *M.V.*

---

[1] This provision appeared in section 501 of the Tariff Act of 1930, 19 U.S.C. § 1501, until June 25, 1948, when it was removed from that section to section 2633, Title 28, U.S.C.

*Jenkins et al.* v. *United States*, 34 C.C.P.A. (Customs) 33, C.A.D. 341, where we held that failure to satisfactorily establish the usual wholesale quantities constitutes a failure to establish one of the essential elements of a valid reappraisement. If appellant has failed to establish the usual wholesale quantities, then, in accordance with the foregoing, it seems clear that he has failed to meet his burden of proof, and the valuation set by the appraiser must stand. * * *

The statements under scrutiny in said case were the following:

* * * the great majority of sales of matrix board to purchasers other than consumers were in quantities of 15,000 square meters or more; * * *

* * * that the great majority of the sales for export to the United States were in quantities of 15,000 square meters or more; * * *

These the court held were merely the judicially declared equivalent of the statutory language "in the usual wholesale quantities" and, hence, not evidentiary facts, but the affiant's own conclusions of ultimate facts. Accordingly, said statements were held not to constitute substantial evidence of the facts in issue.

The statements here under consideration are subject to the same infirmity. The affiant has simply adopted the statutory language as to usual wholesale quantities, without introducing any supporting evidence to establish how he arrived at the conclusion that 50,000 yards and above were the usual wholesale quantities. In so doing, he has arrogated to himself the judicial prerogative, for the determination of what are usual wholesale quantities is matter of law, not of fact, which must rest upon proper evidence of actual sales or offers of sales. Yet, it is plain that no facts are here presented. Neither records of sales, nor pricelists, nor any other corroborative data have been submitted from which a conclusion may be drawn as to the wholesale quantities covered by the majority of sales. As was stated by the Court of Customs and Patent Appeals in the *Brooks Paper Company* case, *supra*, "how can this court and the courts below know whether a witness has properly considered all the factors which enter into a proper determination of the usual wholesale quantities within the meaning of section 402" when the primary facts are not before them.

Counsel for plaintiff urges that the cases of *United States* v. *Fisher Scientific Company*, 40 C.C.P.A. (Customs) 164, C.A.D. 513, and *Kobe Import Co.* v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 630, tend to modify the conclusions of the *Brooks* case with respect to the sufficiency of proof of usual wholesale quantities.

That some departure from the strict view held in the *Brooks* case is indicated in the decisions cited by counsel may be readily conceded, but the effects of the relaxation of the rule, as therein interpreted, do not operate to cure the omissions in this plaintiff's case.

In the case of *United States* v. *Fisher Scientific Company*, *supra*, it appears that although the court was of opinion that a somewhat lesser degree of evidence than that demanded in the *Brooks* case might sub-

sequently be held to be sufficient, it, nevertheless, adhered to the view that "where the exporter of the imported merchandise is the sole producer of such merchandise in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity." [Italics quoted.] Moreover, the court had before it, in the form of a consular report, introduced by the Government, evidence of sales by the exporter upon which to predicate a determination of usual wholesale quantity.

The case of *Kobe Import Co.* v. *United States, supra,* also presents a different picture. The court's holding that statements of ultimate evidentiary facts, may, under some circumstances, constitute sufficient evidence must be read in the light of the fact that it related to testimonial evidence, not evidence in the form of a deposition or affidavit. As stated by the court:

In the present case, Josephson's testimony was given in the presence of opposing counsel, and no objection was made to any of the questions or answers quoted above. He was also cross-examined at length, but no attempt was made to rebut, discredit, or limit his testimony as to what constituted usual wholesale quantities. As observed by the trial judge:

The cross-examination of this witness failed to weaken his direct testimony, the pertinent points of which were confirmed by the affidavit of Chen * * *.

It would immeasurably prolong testimony in most cases if every witness were required to state the reasons for every ultimate fact on which his opinions were based. Accordingly, in the interest of expediency, witnesses frequently state opinions or conclusions and, if opposing counsel considers them improper, he may object, or call for statements of the fact on which they are based. Such a situation differs from that in the *Brooks* case, *supra*, where the conclusion is stated in an affidavit, and there is no opportunity to object to it or to call for the facts on which it is based.

No such safeguards are available to the defendant in this case. If the conclusion of the witness were to be accepted as substantial proof of the facts, defendant would be deprived of any opportunity to challenge it.

Under all the circumstances, it is believed that this case so closely parallels the *Brooks* case as to require the application of the principles therein enunciated.

Furthermore, it is clear that the affidavit here in question is inaccurate and inconsistent. The errors with reference to the description of the merchandise of which it speaks have heretofore been noted. In addition, whereas it is first stated that these goods were freely offered to Gamby & Co. "with restrictions or controls by the Government of India," it concludes with the statement "that prices at which

goods were offered and sold to the United States were not subject to any controls whatsoever." Whether it was thereby intended to show that Gamby & Co. was subject to restrictions or controls, but other American purchasers were not, or whether one statement was an inadvertence, and the other not, the court has no way of knowing.

Assuming *arguendo* that the affiant's familiarity with the domestic market made him competent to state, without a recital of the facts, that owing to controls exercised by the Indian Government such or similar merchandise was not therein freely offered for sale to all purchasers and, hence, that foreign value has been successfully negatived, it must, nevertheless, be concluded that plaintiff has failed to establish export value within the statutory formula.

In this, as in all reappraisement proceedings, the ultimate function of the court is to find the value of the merchandise before it, and it has been held that this function must be fulfilled even though no evidence was submitted at the trial. *United States* v. *Joseph Fischer et al.*, 32 C.C.P.A. (Customs) 62, C.A.D. 286. Accordingly, there have been instances where the court, being of the opinion that the necessary elements of proof have not been established, has been inclined to restore the action to the calendar for additional evidence, to the end that a value may be found. Here, however, is not such a case as induces this judicial clemency. The presumption of correctness attaching to the appraiser's return of value has not been overcome, and plaintiff, although put on notice by defendant's motion to dismiss that its proof might be deficient, chose to stand upon the evidence it had submitted. Having failed to sustain its burden of proof, plaintiff ought not now be given an opportunity to supply the elements here found to be lacking.

Based upon the foregoing considerations, the court finds as follows:

1. That the merchandise involved herein consists of unbleached cotton sheeting, exported from India.

2. That, in the case of reappraisement number 237362–A, said merchandise was entered at $0.14½ per yard, C & F, Boston, less nondutiable charges and appraised at $0.1645 per yard, net, packed, less nondutiable charges.

3. That, in the case of all other shipments here involved, said merchandise was entered at $0.16¼ per yard, C. & F., Boston, less nondutiable charges, and appraised at $0.1843 per yard, net, packed, less nondutiable charges.

4. That there is no evidence to establish any other values than those returned by the appraiser.

The court, therefore, concludes:

1. That plaintiff has failed to overcome the presumption of correctness attaching to the values found by the appraiser.

2. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis of value for the merchandise covered by these appeals for reappraisement, and

3. That such values are those returned by the appraiser.