R. J. SAUNDERS & Co., INC. (PERRY H. CHIPURNOI, INC.)
*v.* UNITED STATES

No. 8002.—

Entry No. 722867.

(Decided May 21, 1951)

*Strauss & Hedges* (*Hadley S. King* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Chauncey E. Wilowski,* special attorney), for the defendant.

CLINE, Judge: This is an appeal for reappraisement of canned meat paste imported from Canada on or about January 28, 1945. It was invoiced at United States $6.13636 per case, entered at Canadian $6.75 per case plus 8 per centum tax, and appraised at United States $8.48 per case of forty-eight 7-ounce tins, net.

It was stipulated at the trial that—

\* \* \* on or about the date of exportation such or similar merchandise was freely offered for sale for consumption in Canada in the usual wholesale quantity in the ordinary course of trade at $7.92 per case of 48 tins, Canadian funds, representing foreign market value.

It appears from the record herein that Perry H. Chipurnoi visited Sans-O Products, Ltd. (hereinafter called Sans-O), in Montreal in the latter part of 1944 and placed an order for 1,500 cases of meat paste packed under the Sans-O label at Canadian $6.75 per case. Subsequently, Sans-O appointed William Faehndrich, Inc., to be its exclusive representative in the United States for merchandise sold under the Sans-O label (plaintiff's exhibits 2 and 3). The letter of confirmation (plaintiff's exhibit 3) contains the following reservation:

Your proposition to be our agents in U. S. A. is accepted following the conditions contained in your letter Nov. 11th. as understood we reserve the right to ship an order of 500 gross of 7-oz. to Perry H. Chipurnoi. We also reserve the right to pack for any other firm in U. S. A. on their own brand.

Mr. Chipurnoi testified that thereafter he was offered the same product at the same price provided he have his own label made up, but that he did not make any purchases because he was unable to obtain a label due to shortages of paper and printing at the time.

J. Massicotte, called as witness for the plaintiff, testified that he is a director and shareholder of Les Conserves Canadiennes-Françaises Limitée (hereinafter called Conserves Canadiennes); that from 1940 to 1948 he was comptroller and assistant manager of both Conserves Canadiennes and Sans-O; that he was assistant to Mr. Jacob, the general manager; that Conserves Canadiennes was the manufacturing company and Sans-O was the distributor for that company; that late in 1944 and in January 1945, Conserves Canadiennes and Sans-O offered meat pastes for export to the United States; that there was no one to whom they refused to sell; that subsequent to the middle of November 1944, the identical product was offered under labels other than Sans-O for export to the United States; that sales were made to Tropical Fruit Products, Ltd., and Murphy Products, Ltd., both of Montreal; that these sales were for export only and not for consumption or resale in Canada; that this merchandise was offered under different labels to other people but the witness could not recall the names of any individuals from whom he had received inquiries or to whom he had sent a price list; that no sales were made to anyone in the United States other than William Faehndrich, Inc., and Chipurnoi; that the merchandise sold to Murphy Products, Ltd., and Tropical Fruit Products, Ltd., was shipped directly to their customers in the United States by Sans-O; that the merchandise was sold for Canadian $6.75 per case and bills were sent to Murphy Products, Ltd., or Tropical Fruit Products, Ltd.; that no sales were made to others in the United

States because of the difficulty of obtaining labels and export permits; that his firm obtained export permits for William Faehndrich, Inc., because it had orders on hand, but could not get them for others because it had no other labels under other trade-marks.

Mr. Massicotte produced an invoice made out to Murphy Products, Ltd., Montreal, showing a shipment to Murphy Products, Ltd., Detroit (defendant's exhibit 4). The price thereon is $20 per gross and the witness explained that 1 gross was equivalent to three cases, which, at $6.75 per case, would equal $20.25; that an allowance of $0.25 per gross was made because the buyer supplied the label.

Rudolph Faehndrich, president of William Faehndrich, Inc., testified that, pursuant to the letters (plaintiff's exhibits 2 and 3), the sale to the United States of products made by Conserves Canadiennes and marketed under the Sans-O label was reserved to his company; that there was no agreement whereby Sans-O and Conserves Canadiennes were precluded from selling the identical products for export to the United States under another label.

Defendant's collective exhibit 5 is a report of Customs Agent C. F. Donohue, dated April 28, 1945. It is stated therein that Mr. V. R. Jacob, manager of Conserves Canadiennes and Sans-O, referred to the arrangement made with William Faehndrich, Inc., and stated that Chipurnoi had been permitted to purchase 1,500 cases of meat paste but that all future sales to the United States would be made only to William Faehndrich, Inc.; that at no time had the merchandise been freely offered to all United States purchasers.

Customs Agent Donohue also reported that he had visited the offices of Tropical Fruit Products, Ltd., and that Mr. C. Foley, president, stated that the meat paste packed under his firm's label is identical to that packed for Sans-O; that his firm sells only for export to the United States and South America; that the merchandise is freely offered to all purchasers in the United States at a uniform price of $10.50 per carton (4 dozen 7-ounce cans) United States funds, freight and duty included. The report contains copies of invoices representative of sales made to United States customers and a memorandum showing that the price of United States $10.50 per case included the price of the merchandise f. o. b. Montreal at United States $8.45 per case, plus United States duty of 20 per centum, plus freight, cartage, and consular invoice fee.

According to a further report of Customs Agent Donohue, dated August 4, 1945 (defendant's exhibit 6), Mr. Foley stated that Murphy Products, Ltd. (which is wholly owned by Tropical Fruit Products, Ltd.), made only three shipments of canned meat paste to the United States; that the unit price of United States $2 per dozen, f. o. b. Montreal, represented the company's freely offered price to all purchasers in the United States; that no agreement exists precluding the

company from offering and selling to all United States customers, but that the Canadian Government would not issue export permits at that time.

Another report of Customs Agent Donohue, dated January 23, 1946 (defendant's exhibit 7), refers to certain correspondence which he summarized as follows:

Letter from Sans-O Products to Chipurnoi, dated September 29, 1944, advising that an export permit was on hand covering shipment of 500 gross (1500 cases) of 7-oz. tins of meat paste at a total value of Canadian $10,125.00; this letter also enclosed Sans-O Products regular export price list. This price list, dated September 29, 1944, quotes a price of $6.75 per case, Canadian funds, per case of 48/7-oz. tins, f. o. b. Montreal, payable in U. S. equivalent, terms cash when ready for delivery.

Letter of November 23, 1944, addressed to Chipurnoi by the shipper, stating as follows: "We have to inform you that our Sans-O Brand meat paste is under contract for U. S. A.; but we have reserved the right to ship you 500 gross Sans-O Brand, and also the right to pack for any other firm in United States on their own brand."

Plaintiff claims that the manufacturer freely offered this merchandise for export to the United States at Canadian $6.75 per case; that such price represents the export value as that value is defined in section 402 (d) of the Tariff Act of 1930; that since the stipulated foreign value of Canadian $7.92 is higher, it constitutes the proper dutiable value of the merchandise involved herein.

Defendant claims, on the other hand, that the evidence is not only insufficient to overcome the presumption of correctness attaching to the appraiser's valuation but that it supports the value found by him.

The issue involved is whether the export value is Canadian $6.75 per case, as claimed by plaintiff, or United States $8.45 per case, as claimed by defendant. At the date of exportation, January 28, 1945, meat paste manufactured by Sans-O, packed with the Sans-O label, was sold only to William Faehndrich, Inc., except for the involved shipment to Chipurnoi. Although Sans-O was permitted under the agreement with William Faehndrich, Inc., to sell the same merchandise under other labels to other purchasers, there is no evidence that any such sales were made to buyers in the United States. Mr. Massicotte testified that offers were made but he was unable to name any of the individuals to whom they were made and did not produce any correspondence substantiating the offers. Although he mentioned a price list, he did not produce it and did not state the price at which the offers were made. Such evidence is not sufficient to establish the price at which the merchandise was freely offered for sale to all purchasers in the United States. *Transatlantic Shipping Co., Inc.* (*Absorbo Beer Pad Co., Inc.*) v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *Scharf Bros. Co., Inc.* v. *United States*, 1 Cust. Ct. 572, Reap. Dec. 4365.

Plaintiff relies upon the sales made to Tropical Fruit Products, Ltd., and Murphy Products, Ltd. These companies were Canadian firms having offices in Montreal and bills were sent to them for the merchandise, although there is evidence that it was shipped directly to their customers or branches in the United States by Sans-O. The sales were therefore inland sales by the manufacturer to the exporter who in turn sold to the customer in the United States. See *United States v. Ferdinand Rice et al.,* 4 Cust. Ct. 813, Reap. Dec. 4886. In that case, it appeared that exporters of silk goods, such as Cooper, Findlay & Co., Ltd., purchased the goods from Yui Shoten and then shipped them to the United States. It was held that the sales and offers by Yui Shoten to Cooper, Findlay & Co., Ltd., established a foreign value rather than an export value.

The reports of Customs Agent Donohue (defendant's collective exhibit 5, and exhibits 6 and 7) indicate that Tropical Fruit Products, Ltd., and Murphy Products, Ltd., purchased the merchandise from Sans-O and sold to their own customers in the United States; there is no evidence that they were acting as agents for Sans-O. The sales by Sans-O were domestic sales (although shipment may have been made to the United States) and the sales by Tropical Fruit Products, Ltd., and Murphy Products, Ltd., were the sales for export.

The record as presented does not establish that there was an export value of Canadian $6.75 per case, as contended by the plaintiff.

There is evidence in the record establishing that Tropical Fruit Products, Ltd., freely offered this merchandise under its own label to all purchasers in the United States at United States $8.45 per case f. o. b. Montreal, plus United States duty of 20 per centum, plus freight, cartage, and consular invoice fee. The appraised value of United States $8.48 per case (evidently a clerical error of $0.03) is therefore supported by the record.

On the record herein I find as facts:

1. That the merchandise involved herein consists of canned meat paste packed forty-eight 7-ounce tins to the case or carton, exported from Canada on January 28, 1945.

2. That at or about the time of exportation such merchandise was offered and sold by Sans-O under its own label to one exclusive purchaser, William Faehndrich, Inc., at Canadian $6.75 per case, net, packed, for export to the United States.

3. That at or about the time of exportation such merchandise without the Sans-O label was offered and sold to Tropical Fruit Products, Ltd., and Murphy Products, Ltd., Canadian firms having offices in Montreal, at Canadian $6.75 per case.

4. That Tropical Fruit Products, Ltd., offered and sold said merchandise under its own label to all purchasers for export to the

United States at United States $8.45 per case, net, packed, f. o. b. Montreal.

5. That at or about the time of exportation such or similar merchandise was being freely offered for sale and sold to all purchasers for home consumption in Canada at Canadian $7.92 per case, net, packed.

I conclude as a matter of law:

1. That the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the instant merchandise.

2. That such value is United States $8.45 per case of forty-eight 7-ounce tins, net, packed.

Judgment will be rendered accordingly.