(A. R. D. 25)

R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)
*v.* United States

Entry No. 722867.

First Division, Appellate Term

(Decided May 27, 1953)

*Strauss & Hedges* (*Hadley S. King* of counsel) for the appellant.
*Charles J. Wagner*, Acting Assistant Attorney General (*Chauncey E. Wilowski*, special attorney), for the appellee.

Before Oliver, Mollison, and Ford, Judges; Mollison, J., dissenting

Oliver, Chief Judge: In this case, we are required to review the decision in *R. J. Saunders & Co., Inc.* (*Perry H. Chipurnoi, Inc.*) v. *United States*, 26 Cust. Ct. 694, Reap. Dec. 8002, wherein the trial judge found export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)) to be the proper basis for appraisement of canned meat paste from Canada, and held such statutory value to be $8.45 (United States currency) per case, net, packed, f. o. b. Montreal. The conclusion sustained the appraised value stated by the court below as follows: "The appraised value of United States $8.48 per case (evidently a clerical error of $0.03) is therefore supported by the record."

The importer, Perry H. Chipurnoi, Inc., contends here, as it did before the trial court, that the proper export value is the entered value, i. e., $6.75 (Canadian currency) per case (equivalent to United States $6.13636 per case), plus 8 per centum tax. If that contention is correct, then by virtue of a stipulation between the parties, a higher foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), becomes the proper basis for appraisement, the amount thereof being agreed to be $7.92 per case of 48 tins, Canadian funds.

The record consists of oral testimony of three witnesses and documentary proof in the form of correspondence, introduced by appellant, and three customs agent's reports (collective exhibit 5, and exhibits 6 and 7), offered by appellee. The entire line of proof supports the following summation.

Sans-O Products, Ltd., exporter of the canned meat paste under consideration, is the distributor of such merchandise bearing the

label, "Sans-O," manufactured by Les Conserves Canadiennes-Françaises Limitée (hereinafter called Conserves Canadiennes). At the time of exportation of the present merchandise, in January 1945, the closest sort of relationship existed between the two companies. Both occupied the same office in Montreal, Canada, and were operated by the same management. The business of each, however, "was handled separately, by different accounting, different sharing."

The distinction between the two organizations should be emphasized. Conserves Canadiennes is the manufacturer of canned meat paste that is sold and distributed under various labels to different purchasers, while Sans-O Products, Ltd., is the distributor of the product under the label, "Sans-O." The observation is important in the light of the following statement made by the trial judge:

The reports of Customs Agent Donohue (defendant's collective exhibit 5, and exhibits 6 and 7) indicate that Tropical Fruit Products, Ltd., and Murphy Products, Ltd., purchased the merchandise from Sans-O and sold to their own customers in the United States; there is no evidence that they were acting as agents for Sans-O.

The foregoing quotation is not a true reflection of the record. On the contrary, the customs agent's report (collective exhibit 5) shows that the canned meat paste packed for Tropical Fruit Products, Ltd. (whose transactions are discussed, *infra*), "under their own label is identical to that packed for Sans-O-Products Limited by the manufacturer, Les Conserves Canadiennes Francaises Ltee."

The shipment in question, comprising 900 cases of canned meat paste under the Sans-O label, is part of an order aggregating 1,500 cases placed by appellant in September 1944. Before delivery was made of the entire quantity of 1,500 cases, Sans-O Products, Ltd., granted to William Faehndrich, Inc., of New York City, the exclusive agency throughout the United States for the sale of Sans-O brand canned meat paste, subject to the undelivered part of appellant's order, hereinabove mentioned. Oral testimony on this point is supported by an exchange of letters between the Sans-O Products, Ltd., and William Faehndrich, Inc., exhibits 2 and 3.

The exclusive agency established by Sans-O Products, Ltd., foreclosed the importer of the present merchandise from placing an additional order under the Sans-O label, which was requested in January 1945. Instead, an offer—and this must have come from the manufacturer—was made to sell the importer herein canned meat paste like the present merchandise at the same price, but under a label to be supplied by the importer. The president of the importing corporation testified that, because of the paper shortage under stress of war conditions, he was unable to get his labels printed, so negotiations ended. Thus we find that, at the time of exportation of the shipment in question, canned meat paste under the Sans-O label was not freely

offered for sale to all purchasers for export to the United States. On the contrary, sales were restricted to an exclusive agent, a condition that precludes such merchandise from becoming the basis for appraisement at statutory export values.

Although appellant's witness, J. Massicotte, who was associated with both Conserves Canadiennes and Sans-O Products, Ltd., as comptroller and assistant manager of each organization, stated that he offered canned meat paste to other people under different labels for exportation to the United States, his testimony along that line is not sufficient to establish statutory export value, section 402 (d) *supra*. The record on this point is as follows:

X Q. You also stated that you had offered this merchandise under different labels to other people. To whom did you offer them?—A. I couldn't remember. There were so many at that time, and we just answered their letters.

X Q. Mention one or two.—A. I really couldn't. It is six years ago.

X Q. Did you offer them to anyone in the United States?—A. Yes, in the United States.

X Q. Who in the United States?—A. I couldn't say. We just exchanged letters.

X Q. Have you any copies of the letters which you exchanged?—A. Not here.

X Q. Have you any copies of any letters you sent to anyone in the United States offering this merchandise?—A. Not here.

X Q. Do you have any of those letters in your office?—A. I may have some in my office.

 \* \* \* \* \* \* \*

X Q. When did you make this offer to individuals in the United States?—A. Around the end of 1944 and the beginning of 1945.

X Q. And where did you obtain the names of these individuals to whom you had offered this merchandise?—A. They wrote us themselves.

X Q. They inquired about it from you?—A. Yes.

X Q. By letter or by telephone?—A. Some by phone and some by letters.

X Q. Do you know of anyone who had telephoned to you?—A. I could not remember.

X Q. Do you have any names of any individuals who have written to you?—A. It is too long ago.

In weighing the foregoing testimony, we borrow from the decision of the trial judge, stating: "Such evidence is not sufficient to establish the price at which the merchandise was freely offered for sale to all purchasers in the United States. *Transatlantic Shipping Co., Inc.* (*Absorbo Beer Pad Co., Inc.*) v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *Scharf Bros. Co., Inc.* v. *United States*, 1 Cust. Ct. 572, Reap. Dec. 4365."

From the foregoing analysis of the record, consideration of the case becomes limited to sales made by Conserves Canadiennes to Tropical Fruit Products, Ltd., and Murphy Products, Ltd., who purchased

under their own labels the same canned meat paste as that sold under the Sans-O label. Both are Canadian firms, and, as reported in the customs agent's report (exhibit 6) "Murphy Products Limited is wholly-owned by Tropical Fruit Products Limited." While sales of the manufacturer were made to the two Canadian companies, the merchandise was shipped direct to their United States customers, or ultimate consignees, by the manufacturer. The practice is revealed through an invoice (exhibit 4) of Les Conserves Canadiennes-Françaises Limitée, showing a sale to "Murphy Products Ltd, 10 St. James St. East, Montreal" and confirming shipment of the items direct to "Murphy Products Ltd., Detroit, Mich., U. S. A." The price of $20 per gross shown thereon was explained in testimony by the manufacturer's representative, said witness, J. Massicotte, as covering the prices of 3 cases (equal to 1 gross) at the regular price of $6.75 per case, with an allowance of 25 cents per gross for labels supplied by the Canadian purchaser, Murphy Products, Ltd., of Montreal.

The transactions between the Canadian manufacturer and Tropical Fruit Products, Ltd., and Murphy Products, Ltd., of Montreal, were controlled sales. The Canadian purchasers were not permitted to sell in the foreign market for home consumption, but were compelled to sell "for export only." The restriction imposed by the manufacturer removes its sales from consideration in determining foreign value, and as transactions consummated in the foreign market between Canadian parties, they are not relevant factors for finding export value.

There is evidence in the record showing that Tropical Fruit Products, Ltd., freely offered, under its own label, canned meat paste similar to the present merchandise, to all purchasers in the United States at $8.45 per case (United States currency), f. o. b. Montreal.

Accepting that proof as sufficient, as we do, to establish statutory export value for the canned meat paste under consideration, is consistent with the conclusion reached by the trial judge.

For the reasons hereinabove set forth, we find as matter of fact:

(1) That the merchandise in question consists of canned meat paste packed forty-eight 7-ounce tins to the case or carton, exported from Canada on January 28, 1945.

(2) That the merchandise was manufactured by Conserves Canadiennes.

(3) That canned meat paste manufactured by Conserves Canadiennes was distributed under the label, "Sans-O," by the Sans-O Products, Ltd., of Montreal.

(4) That canned meat paste manufactured by Conserves Canadiennes was sold by the manufacturer under other labels to different purchasers.

(5) That at or about the time of exportation of the merchandise in question, canned meat paste under the label, "Sans-O," was offered and sold by Sans-O Products, Ltd., for export to the United States, to an exclusive purchaser, William Faehndrich, Inc., of New York City.

(6) That at or about the time of exportation of the merchandise in question, canned meat paste (without the Sans-O label), similar to the product under consideration, was offered and sold to Tropical Fruit Products, Ltd., and Murphy Products, Ltd., Canadian firms having offices in Montreal, at $6.75 per case (Canadian currency) for export only.

(7) That Tropical Fruit Products, Ltd., freely offered and sold under its own label canned meat paste similar to that in question, to all purchasers for export to the United States, at $8.45 per case (United States currency), net, packed, f. o. b. Montreal.

(8) That at or about the time of exportation of the canned meat paste under consideration, such or similar merchandise was freely offered for sale and sold to all purchasers for home consumption in Canada at $7.92 per case (Canadian currency), net, packed.

Accordingly, we hold as matter of law:

(1) That export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), is the proper basis for appraisement of the canned meat paste in question.

(2) That such statutory value for the present merchandise is $8.45 per case (United States currency) of forty-eight 7-ounce tins, net, packed.

The judgment of the trial judge is affirmed.

### DISSENTING OPINION

MOLLISON, Judge: I regret that I am unable to concur in either the reasoning or the conclusion reached by my colleagues in this case. As I view the record, it appears that there was an undisputed foreign value, within the meaning of section 402 (c), as amended, of the Tariff Act of 1930, for merchandise such as or similar to that here involved at $7.92 per case of 48 tins, Canadian funds.

That value, under section 402 (a) (1) of the said act, is to be compared with the export value, defined in section 402 (d), and the higher of the two becomes the statutory value of the merchandise.

On the export value side of the picture, it appears that there was no export value for "such" merchandise, meaning thereby canned meat paste of the kind here involved under the Sans-O label, for the reason that such merchandise was, at the time of exportation of the merchandise here involved, covered by an exclusive agency arrangement. At this point, however, I deem it proper to emphasize that the exclusive agency arrangement covered *only* canned meat paste under the Sans-O

label, and that the manufacturer expressly reserved the right to pack for any other United States firm under such firm's own brand or label.

Turning, therefore, to the question of whether there was an export value for "similar" merchandise, meaning thereby canned meat paste of the kind here involved under labels other than Sans-O, there is some evidence as to three types of offers.

First, there is evidence of offers and sales by the manufacturer to Tropical Fruit Products, Ltd., a Canadian firm, under Tropical's own label, and to Murphy Products, Ltd., a wholly owned subsidiary of Tropical. The trial judge rejected this evidence as having no bearing upon export value upon the ground that the sales by the manufacturer to Tropical and Murphy were, in fact, "inland sales by the manufacturer to the exporter who in turn sold to the customer in the United States." It is apparent that the trial judge regarded these sales as *not* referable to transactions for exportation to the United States.

The majority has rejected this evidence on the ground that such sales were controlled sales for the reason that "The Canadian purchasers were not permitted to sell in the foreign market for home consumption, but were compelled to sell 'for export only'."

Second, there is evidence of offers made by the manufacturer to unnamed individuals or firms. This evidence was in the form of oral testimony by an officer of the manufacturing firm and was rejected by the trial judge as insufficient to establish statutory value on the ground that it was not substantiated by correspondence, price lists, etc. It was rejected by the majority on the same ground.

Third, there is evidence of offers and sales made in Canada by Tropical of canned meat paste under its own label for exportation to the United States. This evidence was accepted by the trial judge and the majority as establishing export value under the statute.

I am of the opinion that the first and second types of evidence offered, considered together, established that merchandise similar to that here involved was, at the time of exportation, freely offered for sale to all purchasers in the principal market of Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at Canadian $6.75 per case, net, packed.

The complete picture of the market for canned meat paste of the type here involved under labels other than Sans-O at the time of exportation shows that the manufacturer had expressly reserved from the exclusive agency agreement with William Faehndrich, Inc., the right to pack and sell that type of merchandise to others; that the sales made to Tropical and Murphy were for export only and not for consumption or resale in Canada; and that similar offers were made to others.

The trial judge's view that the sales to Tropical and Murphy were "inland" sales (meaning thereby, presumably, for home consumption

in Canada or for exportation to countries other than the United States) is negatived by the evidence by plaintiff's witness Massicotte and substantiated by the customs agent's report, defendant's collective exhibit 5, wherein it is shown that the sales in question were expressly for exportation to the United States.

The majority takes the view that such sales were "restricted" because the Canadian purchasers were not permitted to sell in the foreign market for home consumption, but were compelled to sell "for export only." It seems to the writer that the requirement for exportation included exportation to the United States, and, consequently, while the restriction was such as would exclude the sales (by the manufacturer to Tropical and Murphy) from establishing foreign value under the statute, it definitely established the sales as evidence of export value under the statute.

While I would agree that the testimony given by the witness Massicotte as to offers by the manufacturer to others than Tropical and Murphy for exportation to the United States, *if standing alone*, would be insufficient to establish statutory export value, nevertheless, that is not the situation with regard to that testimony. The testimony was obviously offered to round out the picture of offers of merchandise similar to that here involved in the principal markets of Canada *to all purchasers* for exportation to the United States.

The plaintiff had offered evidence of sales to Tropical and Murphy. Presumably, to establish that offers and sales were not limited to those two firms, Mr. Massicotte's testimony was offered as to the sales policy of the manufacturer with regard to offers for export to the United States of merchandise under other than the Sans-O label. He testified that at the time in question the manufacturer offered the meat pastes for export to the United States, did not refuse to sell to anyone, and placed no restriction upon the sale of the merchandise for export to the United States. On cross-examination (partly quoted in the majority opinion), the witness said that in response to inquiries from the United States, his firm replied and enclosed a price list, but because of the lapse of time he was unable to remember the names of the individuals involved. None of such offers, he said, resulted in sales, because of the difficulty of procuring labels, there being a shortage of paper at that time.

It must be remembered that this witness was testifying under the sanctions of oath and cross-examination, and while corroboration or substantiation may have been desirable, it was not necessary or required by any rule of the law of evidence. His testimony was offered by the plaintiff in discharge of its burden of overcoming the statutory presumption in favor of the appraised value (28 U. S. C., 1948 rev., § 2633); it was consistent with other evidence offered with respect to the reservation of the right to make such offers as he was

testifying about, and is nowhere directly controverted. In my view, it, together with the other evidence in the case, including that offered by the defendant, was sufficient to overcome the statutory presumption and establish the correctness of the plaintiff's claim.