R. J. SAUNDERS & CO., INC. (PERRY H. CHIPURNOI, INC.)
*v.* UNITED STATES (No. 4787)[1]

---
[1] C. A. D. 570

56

United States Court of Customs and Patent Appeals, June 24, 1954

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Joseph Schwartz* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, special attorneys, of counsel), for the United States.

[Oral argument April 7, 1954. by Mr. Schwartz and Mr. Auster]

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Associate Judges

COLE, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding involving an importation of a quantity of canned meat paste from Montreal, Canada. A single judge of the United States Customs Court held that export

value as defined in section 402 (d) of the Tariff Act of 1930 [1] [19 U. S. C. sec. 1402 (d)] was the applicable basis for appraisement, the value found being $8.45 per case of 48 7-ounce tins, net, packed, as against the entered and claimed export value of $6.75 (Canadian currency) per case, plus 8 per cent tax. *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States*, 26 Cust. Ct. 694, Reap. Dec. 8002. Upon appeal, the First Division of the Customs Court, one Judge dissenting, affirmed the findings of the trial judge. *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States*, 30 Cust. Ct. 655, A. R. D. 25.

By agreement of the parties, a foreign market value of $7.92 per case (Canadian currency) was stipulated to exist in accordance with section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 [19 U. S. C. sec. 1402 (c)]. This valuation, being higher than the export value of $6.75 contended for by the appellant, becomes the proper basis for appraisement should appellant prevail in these proceedings. The stipulated foreign market value, however, will not be applied should we affirm the decision of the court below as such value is lower than the export value found to be applicable by that tribunal. The precise issue, therefore, amounts to this: What is the correct export value of the merchandise?

The evidence on the subject was fully discussed by the appellate division of the Customs Court and after appropriate weight was assigned thereto, as the court viewed the record, the value aforesaid was declared. It is not for this court on review of that action to discuss the weight given the evidence by the lower court. In reappraisement proceedings, it is the exclusive statutory province of the single judge and appellate division of the Customs Court to make findings of fact which, whenever there is any substantial evidence to support such findings, are conclusive upon us. *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 C. C. P. A. (Customs) 96, C. A. D. 176. It is the function of this court to review only questions of law presented on the record to determine whether there was misapplication of such law by the court below in arriving at its decision. *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502. It is necessary, however, to some extent, to consult the evidence in order to discharge our function of reviewing the law applicable to the facts as established. Accordingly, we quote from the opinion below as follows:

Sans-O Products, Ltd., exporter of the canned meat paste under consideration, is the distributor of such merchandise bearing the label, "Sans-O," manufactured by * * * Conserves Canadiennes. At the time of exportation of the present

---

[1] Sec. 402 (d) Export Value

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *

merchandise, in January 1945, the closest sort of relationship existed between the two companies. Both occupied the same office in Montreal, Canada, and were operated by the same management. The business of each, however, "was handled separately, by different accounting, different sharing."

The distinction between the two organizations should be emphasized. Conserves Canadiennes is the manufacturer of canned meat paste that is sold and distributed under various labels to different purchasers, while Sans-O Products, Ltd., is the distributor of the product under the label, "Sans-O." * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The shipment in question, comprising 900 cases of canned meat paste under the Sans-O label, is part of an order aggregating 1,500 cases placed by appellant in September 1944. Before delivery was made of the entire quantity of 1,500 cases, Sans-O Products, Ltd., granted to William Faehndrich, Inc., of New York City, the exclusive agency throughout the United States for the sale of Sans-O brand canned meat paste, subject to the undelivered part of appellant's order, hereinabove mentioned. * * *

In its further development of the pertinent facts of record, the appellate division stated that the agency agreement hereinbefore referred to between Sans-O Products, Ltd. and William Faehndrich, Inc. did not preclude the former from selling the same merchandise to other purchasers under a label different than "Sans-O," which, as aforesaid, was reserved to the latter company. In this connection, it is well to note here that certain testimony was adduced on behalf of the appellant to the effect that numerous offers to sell the merchandise for export to the United States were made by the manufacturer and/or distributor under other labels at the claimed price of $6.75. With the exception of sales made to Murphy Products Limited and Tropical Fruit Products Limited, (hereinafter referred to as Murphy and Tropical), discussed *infra*, the alleged offers to sell were held not to have been substantiated by price lists or other correspondence indicating to whom or exactly when the offers were made. Accordingly, the appellate division was of the opinion that such evidence was insufficient to establish the price at which the merchandise was freely offered for sale to all purchasers in the United States in accordance with the statutory export provisions of section 402 (d), *supra*.

Proceeding with its discussion, the court stated:

* * * consideration of the case becomes limited to sales made by Conserves Canadiennes to Tropical Fruit Products, Ltd., and Murphy Products, Ltd., who purchased under their own labels the same canned meat paste as that sold under the Sans-O label. Both are Canadian firms, and, as reported in the customs agent's report (exhibit 6) "Murphy Products Limited is wholly-owned by Tropical Fruit Products Limited." While sales of the manufacturer were made to the two Canadian companies, the merchandise was shipped direct to their United States customers, or ultimate consignees, by the manufacturer. * * *

There is no dispute that the sales to Murphy and Tropical were, in fact, made at the price claimed by the importer of $6.75 per case. The appellate division, however, made the following observation:

The transactions between the Canadian manufacturer and Tropical Fruit Products, Ltd., and Murphy Products, Ltd., on Montreal, were controlled sales. The Canadian purchasers were not permitted to sell in the foreign market for home consumption, but were compelled to sell "for export only." * * *

In the light of the foregoing, the court held that the stated restriction against selling for home consumption removed the sales made to Murphy and Tropical from consideration in determining foreign value, and that "as transactions consummated in the foreign market between Canadian parties, they are not relevant factors for finding export value." The court concluded, based on its analysis of the record, that the only acceptable evidence of a statutory export value was that indicating that Tropical freely offered the same merchandise under its own label to all purchasers in the United States at $8.45 per case.

The principal question in dispute is whether the controversial sales to Tropical and Murphy, coupled with the restriction aforesaid, constituted a controlled market rendering evidence of such sales an unsatisfactory basis upon which to predicate the establishment of an export valuation within the meaning and contemplation of section 402 (d), *supra*. It is our opinion that, in reviewing the questions of law presented, the finding by the lower court, referred to herein, that a closed or restricted market resulted from the limitation accompanying the sales to Murphy and Tropical (which, as held, removed such sales from consideration as relevant factors in determining export value) is very properly a reviewable question of law of decisive importance in this proceeding.

It is clear that if the manufacturer freely offers his merchandise for sale, the price of the dealer who purchases from such manufacturer and resells cannot be used as the basis of appraisement. *United States* v. *S. S. Kresge Co., et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39. Manifestly, however, the statute requires that the goods be freely offered. In this respect, the only condition imposed by the manufacturer upon its sales to Murphy and Tropical was that the merchandise be sold for export only and not for consumption in the foreign market.

In considering the issue of the closed or restricted market, it is well to emphasize the pertinent portions of section 402 (d), *supra*, as follows:

* * * is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *

As succinctly stated by the dissenting judge below, "the requirement for exportation included exportation to the United States." Under the above language of the statute, the transactions between the Canadian manufacturer and Tropical and Murphy of Montreal cannot be deemed to be controlled sales in the sense that the limitation imposed thereon should operate in derogation of the establishment of a

freely offered price for export to the United States. While the stated restriction would quite obviously exclude consideration of the sales in computing a foreign market value, that fact cannot be enlarged, as the majority of the court below has sought to do, to justify the conclusion that the sales to Tropical and Murphy could not be considered as an applicable basis for an export valuation.

Although it is clear that the merchandise was shipped by the manufacturer or distributor direct to the customers of Murphy and Tropical in the United States, or direct to Murphy itself in the United States, the majority opinion seemingly infers that there was some infirmity connected with the fact that each of the involved firms was a Canadian Company. We know of no requirement in section 402 (d), *supra*, that the sales be made to purchasers located in the United States.

In an effort to show that the sales to Murphy and Tropical were conditional or restricted and henceforth not indicative of a freely offered price to all purchasers for export to the United States, the appellee draws attention to *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262. Without attempting detailed discussion of the factual situation prevailing in that case, it is sufficient to say that we were there dealing with a clear instance of a controlled foreign market which rendered valuation of the involved merchandise under the foreign value provisions of the Tariff Act of 1930, as urged by the appellant therein, manifestly inapplicable. We do not believe that the cited case is pertinent or controlling of the issue presented herein.

While the foregoing findings make it unnecessary to discuss other points raised in the case, we have nevertheless reviewed the ruling by the appellate division relative to the consideration given to the important testimony submitted by the appellant's witness, Chipurnoi, the importer herein, to the effect that the manufacturer made additional offers of the same product under a label other than "Sans-O" at $6.75 per case at or about the time of exportation of the involved merchandise. Specifically, the court below said:

* * * The president of the importing corporation testified that, because of the paper shortage under stress of war conditions, he was unable to get his labels printed, so negotiations ended. Thus we find that, at the time of exportation of the shipment in question, canned meat paste under the Sans-O label was not freely offered for sale to all purchasers for export to the United States. On the contrary, sales were restricted to an exclusive agent, a condition that precludes such merchandise from becoming the basis for appraisement at statutory export value.

As the manufacturer had expressly reserved the right to sell the same merchandise under labels other than "Sans-O", and did, as established, so sell for exportation to the United States, we do not think that it necessarily follows that because the importer was unable to procure labels, as stated, that the same merchandise was not freely

offered for sale thereto. The evidence is clearly to the contrary and should have been considered in the light in which it was offered.

The export value of the merchandise involved being $6.75 (Canadian currency) per case as herein determined, the judgment of the United States Customs Court is *reversed*, and the agreed foreign market value of $7.92 (Canadian currency) per case, net packed, being higher than the export value, should apply as the proper basis of appraisement.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.

JOHNSON, J., and JACKSON, J., dissent.